## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE 1, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 1:17-cv-00870-TSC |
| v. ) | |
| ) | |
| HOWARD UNIVERSITY, ) | |
| Defendant. ) | |
| ) | |

## [PROPOSED] ORDER

AND NOW, on this _____ day of _____, 2017, after consideration of

Defendant Howard University's Motion to Dismiss Plaintiffs' Complaint, and any Response(s)

thereto, IT IS HEREBY ORDERED that the Motion is GRANTED.  Plaintiffs' Complaint is

dismissed with prejudice.


BY THE COURT:


_____

TANYA S. CHUTKAN
United States District Judge


Attorneys entitled to be notified of this Order's entry:

Linda M. Correia (D.C. Bar No. 435027)
Lauren A. Khouri (D.C Bar No. 10282288)
1775 K Street NW, Suite 600
Washington, DC 20006
(202) 602-6500
lcorreia@correiaputh.com
lkhouri@correiaputh.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JANE DOE 1, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No. 1:17-cv-00870-TSC** |
| **v.** | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| **HOWARD UNIVERSITY,** | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT HOWARD UNIVERSITY'S MOTION TO DISMISS
<u>PLAINTIFFS' COMPLAINT</u>**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Howard University (the "University") hereby moves the Court to dismiss Plaintiffs' Complaint for the reasons set forth in the accompanying Memorandum of Law.

The University requests oral argument on this Motion pursuant to Local Rule

LCvR 7(f).

Date:  July 3, 2017                                    Respectfully submitted,

                                                       /s/ Matthew D. Foster_____
                                                       Matthew D. Foster
                                                       (D.C. Bar No. 503057)
                                                       **PEPPER HAMILTON LLP**
                                                       Hamilton Square
                                                       600 Fourteenth Street, N.W.
                                                       Washington, D.C. 20005-2004
                                                       fosterm@pepperlaw.com
                                                       Telephone: 202.220.1235
                                                       Facsimile:  202.220.1665

                                                       Michael E. Baughman, Esq. (*pro hac vice*)
                                                       (PA Bar No. 78690)
                                                       baughmam@pepperlaw.com
                                                       Hedya Aryani, Esq. (*pro hac vice*)
                                                       (PA Bar No. 306616)
                                                       aryanih@pepperlaw.com
                                                       PEPPER HAMILTON LLP
                                                       3000 Two Logan Square
                                                       Eighteenth & Arch Streets
                                                       Philadelphia, PA  19103-2799
                                                       (215) 981-4000

                                                       Ariana Wright Arnold, Esq.
                                                       Senior Associate General Counsel
                                                       Howard University
                                                       2400 6th Street, N.W.
                                                       Johnson Administration Building, Suite 321
                                                       Washington, DC  20059
                                                       (202) 806-2657
                                                       ariana.arnold@Howard.edu

                                                       *Attorneys for Defendant*
                                                       *Howard University*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JANE DOE 1, et al.** | | ) |
| | | ) |
| | **Plaintiffs,** | ) |
| | | ) |
| **v.** | | ) |
| | | ) |
| **HOWARD UNIVERSITY,** | | ) |
| | **Defendant.** | ) |
| | | ) |

**Civil Action No. 1:17-cv-00870-TSC**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HOWARD UNIVERSITY'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL ALLEGATIONS PLEADED IN THE COMPLAINT................................. 3

        A.      Jane Doe 1................................................................................................. 3
        B.      Jane Doe 2................................................................................................. 6
        C.      Jane Doe 3................................................................................................. 7
        D.      Jane Doe 4................................................................................................. 9
        E.      Jane Doe 5................................................................................................ 11

III.    LEGAL STANDARDS FOR A MOTION TO DISMISS.............................................. 12

IV.     ARGUMENT ...................................................................................................... 13

        A.      The Court Should Dismiss Counts I, III, V, VI, and VII Because Plaintiffs
                Do Not State a Title IX Claim For Gender Discrimination ................................. 13

                1.      Title IX Provides a Damages Claim Only for Intentional Gender
                        Discrimination:  An Institutional Decision Not to Address Known,
                        Ongoing Harassment...................................................................... 13

                        a.      *Plaintiffs Must Plead and Prove that the Defendant was
                                Deliberately Indifferent*................................................. 15
                        b.      *Plaintiffs Must Plead and Prove that the School's
                                Deliberate Indifference Caused the Plaintiffs to Suffer
                                Additional Severe and Pervasive Harassment*............................. 17

                2.      Plaintiffs Plead No Facts Showing that Howard's Response to
                        Their  Claims Amounts to Deliberate Indifference or Caused Them
                        to Suffer Additional Harassment. ............................................... 21

                        a.      *Jane Doe 1 Fails to State a Discrimination Claim* ...................... 23

                                (1)     Howard is Not Liable for Causing Plaintiff's
                                        Assault..................................................... 23
                                (2)     Howard Was Not Deliberately Indifferent to Jane
                                        Doe 1's Report of Sexual Assault.................................... 26

                        b.      *Jane Doe 2 Fails to State a Discrimination Claim* ...................... 27
                        c.      *Jane Doe 3 Fails to State a Discrimination Claim* ...................... 29
                        d.      *Jane Doe 4 Fails to State a Discrimination Claim* ...................... 31
                        e.      *Jane Doe 5 Fails to State a Discrimination Claim* ...................... 32

B.     The Court Should Dismiss Counts II (Jane Doe 1), IV (Jane Doe 2), and VIII (Jane Doe 5) Because Plaintiffs Do Not State a Title IX Claim For Retaliation ...................................................................................................... 35

       1.    Jane Doe 1 Fails to State a Retaliation Claim .......................................... 37

       2.    Jane Doe 2 Fails to State a Retaliation Claim .......................................... 38

       3.    Jane Doe 5 Fails to State a Retaliation Claim .......................................... 39

V.     RELIEF .................................................................................................................. 40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........................................................12

*Baldwin v. New York State*, No. 15-3910,
    2017 U.S. App. LEXIS 8261 (2d Cir. May 10, 2017) ............................36

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................12

\*Bello v. Howard Univ.*, 898 F. Supp. 2d 213 (D.D.C. 2012) .....................17, 18

\*Blue v. Dist. of Columbia*, 850 F. Supp. 2d 16 (D.D.C. 2012) ........................18

*Brodsky v. Trumbull Bd. of Educ.*, No. 3:06cv1947 (PCD),
    2009 U.S. Dist. LEXIS 8799 (D. Conn. Jan. 30, 2009)...........................21

\*Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999)................... passim

\*Delbert v. Duncan*, 923 F. Supp. 2d 256 (D.D.C. Feb. 14, 2013) ..............22, 35

*Doe v. Bd. of Educ. of Prince George's County*, 982 F. Supp. 2d 641 (D. Md. 2013)............16, 26

*Doe v. Blackburn Coll.*, No. 06-3205,
    2012 U.S. Dist. LEXIS 24797 (C.D. Ill. Feb. 27, 2012)....................24, 25

*Doe v. Claiborne County, Tenn.*, 103 F.3d 495 (6th Cir. 1996) ........................16

\* *Doe v. Ohio State Univ. Bd. of Regents*, No. 2:04-CV-0307,
    2006 U.S. Dist. LEXIS 70444 (S.D. Ohio Sept. 28, 2006) ................23, 24, 25, 32

*Doe v. Willits Unified Sch. Dist.*, 473 F. App'x 775 (9th Cir. 2012)...........15

*Escue v. Northern OK College*, 450 F.3d 1146 (10th Cir. 2006) ......................18

*Facchetti v. Bridgewater Coll.*, 175 F. Supp. 3d 627 (W.D. Va. 2016) ............16, 17, 27

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010) ............39

*Frazier v. Fairgaven Sch. Comm.*, 276 F.3d 52 (1st Cir. 2002) ....................36

\*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) ............ passim

*Gillen v. Borough of Manhattan Community College*, No. 97 Civ. 3431 (DAB),
    1999 U.S. Dist. LEXIS 4862 (S.D.N.Y. Apr. 12, 1999).........................36

*Goring v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. College*, 9
    32 F. Supp. 2d 642 (M.D. La. 2010) ...................................................................35

*\*Ha v. Northwestern Univ.*, No. 14-cv-00895,
    2014 U.S. Dist. LEXIS 160046 (N.D. Ill. Nov. 13, 2014) ..........................20, 26, 28

*Hansen v. Bd. of Trs. of Hamilton Southeastern Sch. Corp.*, 551 F.3d 599 (7th Cir. 2008) .........24

*Hazley v. Monroe County Bd. of Ed.*, No. 08-0142-WS-B,
    2008 U.S. Dist. LEXIS 102283 (S.D. Ala. Dec. 17, 2008) ...................................29

*\*Holloway v. Howard Univ.*, 206 F. Supp. 3d 446 (D.D.C. 2016) ...............................22

*\*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) ...................................35

*Karasek v. Regents of the Univ. of Cal.*, No. 15-cv-03717-WHO,
    2016 U.S. Dist. LEXIS 98949 (N.D. Cal. July 28, 2016) .....................................16

*Karasek v. Regents of the Univ. of California*, No. 15-cv-03717-WHO,
    2015 U.S. Dist. LEXIS 166524 (N.D. Cal. Dec. 11, 2015) ...............................19, 28

*KF v. Monroe Woodbury Central Sch. Dist.*, No. 12-CV-2200 (ER),
    2012 U.S. Dist. LEXIS 60341 (S.D.N.Y. Apr. 30, 2012) .......................................18

*Lopez v. Regents of the Univ. of Cal.*, No. C-13-2811 EMC,
    2013 U.S. Dist. LEXIS 173228 (N.D. Cal. Dec. 10, 2013) .....................................19

*M.D. v. Bowling Green Indep. Sch. Dist.*, No. 1:15-CV-00014-GNS-HBB,
    2017 U.S. Dist. LEXIS 11504 (W.D. Ky. Jan. 27, 2017) ......................................20

*McCoy v. Bd. of Educ.*, 515 F. App'x 387 (6th Cir. 2013) ...........................................24

*Miles v. Washington*, No. CIV-08-166-JHP,
    2009 U.S. Dist. LEXIS 7300 (E.D. Okla. Feb. 2, 2009) ........................................37

*Montoya v. N.M. Inst. of Mining & Tech. Bd. of Regents*, No. 2:16-cv-00386-MCA-SMV,
    2017 U.S. Dist. LEXIS 40641 (D.N.M. Mar. 21, 2017) .....................................19, 21

*Moore v. Murray State Univ.*, No. 5:12-CV-00178,
    2013 U.S. Dist. LEXIS 33768 (W.D. Ky. Mar. 12, 2013) ..................................18, 19

*Moore v. Regents of the Univ. of Cal.*, No. 15-cv-05779-RS,
    2016 U.S. Dist. LEXIS 67548 (N.D. Cal. May 23, 2016) .......................................32

*\*Noble v. Branch Intermediate Sch. Dist.*, No. 4:01cv 58,
    2002 U.S. Dist. LEXIS 19600 (W.D. Mich. Oct. 9, 2002) .................................20, 27

*O'Hara v. Colonial Sch. Dist.*, No. 99 CV 399,
    2002 U.S. Dist. LEXIS 12153 (E.D. Pa. Mar. 25, 2002) .......................................20

*Oden v. Northern Marianas Coll.*, 440 F.3d 1085 (9th Cir. 2006)............................15, 16, 32, 33

*Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843 (9th Cir. 2014) .................................36

*Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356 (6th Cir. 2012)............................................24

*Preusser v. Taconic Hills Cent. Sch. Dist.*, No. 1:10-CV-1347 (MAD/CFH),
    2013 U.S. Dist. LEXIS 7057 (N.D.N.Y. Jan. 17, 2013).........................................................26

*Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000)...........................................19

*Romero v. City of New York*, 839 F. Supp. 2d 588 (E.D.N.Y. 2012) ...........................................29

*Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648 (5th Cir. 1997) ...............................15, 18

*Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325 (M.D. Ga. 2007) ..................24, 36, 37, 39

*Ross v. Univ. of Tulsa*, 180 F. Supp. 3d 951 (N.D. Okla. Apr. 15, 2016)....................................27

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156 (5th Cir. 2011).......16, 27

*Schaefer v. Las Cruces Public Sch. Dist.*, 716 F. Supp. 2d 1052 (D.N.M. 2010) ...................15, 24

*School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273 (1987)...............................................30

*Staehling v. Metro. Gov't*, No. 3:07-0797,
    2008 U.S. Dist. LEXIS 91519 (M.D. Tenn. Sept. 12, 2008)................................................16

*Tackett v. Univ. of Kan.*, No. 16-2266-JTM,
    2017 U.S. Dist. LEXIS 19536 (D. Kan. Feb. 10, 2017) ......................................................38

*Takla v. Regents of the Univ. of Cal.*, 2:15-cv-04418-CAS(SHx),
    2015 U.S. Dist. LEXIS 150587 (C.D. Cal. Nov. 2, 2015).....................................................19

*Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816 (M.D. Tenn. 2014) .......................................19

*Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253 (6th Cir. 2000) .......................17, 21, 32

*Wells v. Hense*, No. 1:16-cv-0901-ESH,
    2017 U.S. Dist. LEXIS 9332 (D.D.C. Jan. 24, 2017)...........................................19, 36, 38, 39

*Williams v. Columbia Univ.*, No. 11 Civ. 8621 (WHP),
    2012 U.S. Dist. LEXIS 130358 (S.D.N.Y. Aug. 28, 2012)....................................................39

*Witherspoon v. Philip Morris, Inc.*, 964 F. Supp. 455 (D.D.C. 1997)............................................5

*Wynne v. Tufts University School of Medicine*, 976 F.2d 791 (1st Cir. 1992)..............................30

STATUTES

*20 U.S.C. § 1681(a)* ....................................................................................................13

## **CONCISE STATEMENT OF REASONS SUPPORTING POSITION**

Plaintiffs' Complaint should be dismissed for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6).  The Complaint asserts claims under Title IX of the Educational Amendments of 1972 for (1) intentional gender discrimination, and (2) retaliation.  Plaintiffs fail to state a claim for gender discrimination because their allegations do not demonstrate that Defendant's alleged conduct was based on their gender, or that any deliberate indifference by Defendant to their reports of sexual assault caused them to suffer gender discrimination, as required by *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) and *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999).  Plaintiffs also fail to state a claim for retaliation because they plead no facts demonstrating a causal connection between their reports of sexual assault and any alleged conduct by Defendant.

## I.     INTRODUCTION

Plaintiffs are five current and former students who claim they were assaulted while attending Howard University ("Howard" or "the University").  Plaintiffs agree that the University investigated each of their claims, and the assailant in each of their cases was disciplined or removed from Howard's campus.  They do not claim that their alleged assailants further harassed them after Howard was put on notice of their claims.  Nevertheless, Plaintiffs claim that Howard violated Title IX of the Educational Amendments of 1972 ("Title IX"), by failing to provide them with the particular processes and remedies they desired.  They claim that Howard took too long to resolve the complaints, failed to provide them with appropriate academic accommodations, failed to provide them with appropriate counseling, and made insensitive comments during the course of their interactions with the University.  These allegations are untrue.  But even accepting their truth for the purposes of this Motion as Howard must, Title IX does not provide a remedy for negligently handing a student disciplinary claim or for failing to "remedy" sexual harassment committed by others.  Schools can be liable under Title IX only for their own intentional gender discrimination, which Plaintiffs do not and cannot allege.

In two seminal decisions, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) and *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999), the Supreme Court held that a Title IX claim for damages is available only upon a showing of intentional gender discrimination, meaning deliberate indifference to known acts of sexual harassment.  Schools are not liable simply because sexual harassment occurs on their campuses, nor is a school required to provide any particular remedy or response when it learns of past acts of harassment by members of its community.  Rather, Title IX permits liability only where a school official ***knows*** that there is ongoing harassment in its programs, and then makes an ***affirmative decision to ignore it***.

None of the Plaintiffs here pleads facts sufficient to meet this high bar. Once Howard learned of their reports of sexual assault, it took action. None of the Plaintiffs pleads facts sufficient to show that she was subjected to harassment after Howard learned of her assault, let alone any harassment caused by Howard. While Plaintiffs may disagree with the particulars of Howard's response, ***Howard*** did not subject Plaintiffs to intentional gender discrimination. Therefore, Counts I, III, V, VI and VII should be dismissed with prejudice.

Several of the Plaintiffs also claim that Howard "retaliated" against them in violation of Title IX. These claims fail because Plaintiffs fail to plead any facts plausibly suggesting that any of Howard's alleged conduct toward them was based on their gender. Nor do they allege any facts demonstrating a causal connection between their reports of sexual assault and any subsequent action by Howard. Indeed, most of the retaliation claims simply duplicate the "deliberate indifference" claims. As Howard did not retaliate against Plaintiffs based on their gender, the Court should also dismiss Counts II, IV and VIII with prejudice.

Contrary to the allegations in the Complaint, Howard takes seriously every claim of sexual assault, and it did so with respect to the Plaintiffs here. It offers its students resources and accommodations to help them deal with the horrible effects of sexual assault. But putting the merits of the allegations in the Complaint aside, the ***legal theory*** upon which the Complaint is premised is fundamentally flawed. The Supreme Court allowed a limited cause of action under Title IX in situations where a school knowingly allows a community member to harass a student in its academic programs, taking no action to stop it. This Court should decline Plaintiffs' invitation to create a new cause of action premised not on a school's deliberate indifference to known harassment actively occurring in its programs, but on the adequacy of a school's response to an incident of sexual assault that has already occurred.

Claims of student-on-student sexual assault are difficult cases for the criminal justice system, never mind institutions of higher learning. No case will ever be handled perfectly in the minds of all participants, and in every case one side will be dissatisfied with the outcome. Allowing claims like Plaintiffs' to proceed will expose institutions of higher learning to liability that neither the Supreme Court nor Congress ever intended. As Howard did not discriminate against Plaintiffs based on their gender, the Court should dismiss the Complaint.

## II.    FACTUAL ALLEGATIONS PLEADED IN THE COMPLAINT

While the Complaint spends well over 300 paragraphs alleging facts as to each of the five Plaintiffs, the facts essential to the claims and this Motion to Dismiss are considerably more straightforward. Each Plaintiff alleges that she was sexually assaulted by a member of the Howard University community while attending Howard. While Plaintiffs take issue with the details of Howard's response, and criticize Howard administrators for allegedly making insensitive comments along the way, the Complaint itself pleads that Howard took action as soon as it learned of each of the alleged assaults and offered accommodations – even if it did not offer the specific accommodations that were desired. And although the Complaint takes issue with how long it took, each of the alleged assailants was eventually removed from the campus community. None of the Plaintiffs alleges that she suffered additional harassment at the hands of her alleged perpetrator after the assault was reported to Howard.

### A.    Jane Doe 1

Jane Doe 1 was a student and Resident Assistant ("RA") at Howard. Compl. ¶¶ 45-46. Doe 1 alleges she was raped in her dormitory on February 7, 2016, by another student ("Assailant 1"), who was also an RA. *Id.* ¶ 48. Three weeks later, on February 28, 2016, she reported the incident to Howard's Title IX Coordinator and campus police. *Id.* ¶ 50. The Title IX Coordinator helped draft a statement for Doe 1 to make a complaint against Assailant 1. *Id.* ¶

52.  Howard's campus police connected Doe 1 to the Metropolitan Police Department of the

District of Columbia ("D.C. Police").   In response to Doe 1's safety concerns, the Title IX

Coordinator had Assailant 1 transferred to another dormitory (*id.* ¶¶ 51, 55), but (in consideration

of Assailant 1's rights) explained that he could not be pulled out of all her classes while the

investigation was pending.  *Id.* ¶ 54.  Howard permitted Doe 1 to take classes remotely while the

investigation was pending.  *Id.* at ¶ 55.

Doe 1 does not allege that she ever again encountered Assailant 1, but rather

alleges that she feared running into him on campus (*id.* ¶¶ 83-84), and that, on one undated

occasion, she saw video footage of him walking into her dormitory building (*id.* ¶ 86).  Doe 1

alleges that by March 31, 2016 – about a month after she reported her alleged assault – she

learned that Assailant 1 was expelled from Howard.  *Id.* ¶ 85.  Nevertheless, Doe 1 takes issue

with the University's alleged lack of responsiveness during her investigation, and the fact that

she was allegedly not informed by Howard that Doe 1 had been expelled or suspended.  *Id.* ¶¶

58, 74.  Doe 1 also complains (and Howard disputes) that certain administrators made insensitive

comments to her after she reported her assault.  *Id.* at ¶¶ 56, 68, 70.

Doe 1 claims that Howard retaliated against her based on her report of sexual

misconduct.  On March 8, 2016, Howard allegedly removed Doe 1 from her position as an RA

after receiving a report that she violated a University policy.  *Id.* ¶ 60.  Doe 1 alleges that

Assailant 1 reported her "in retaliation for reporting her rape," though she does not allege that the

accusation was unfounded or that she did not, in fact, violate University policy.  *Id.* ¶¶ 60-61,

364.  While Doe 1 alleges that Howard's actions constituted gender discrimination, Doe 1 had a

male friend who was also removed as an RA as a result of his involvement in the same reported

policy violation as Doe 1.  *Id.* ¶ 101.

On May 4, 2016, Doe 1 spoke with Howard's Dean of Residence Life about whether she could reapply to be an RA and was told that the matter had been referred to campus police for a full investigation.  *Id.* ¶ 93.  On May 16, "a representative of Howard" told Doe 1's attorney that Residence Life was treating the matter strictly as a Human Resources issue "not related to Plaintiff's complaint of sexual assault."  *Id.* ¶ 95.  Less than a month later, on June 7, 2016, Howard gave Doe 1 permission to apply for an RA position for the 2016-2017 academic year.  *Id.* ¶ 97.  Howard approved her application, Doe 1 completed RA training, and she resumed as an RA in the fall semester.  *Id.* ¶¶ 105, 106, 109.[1]

Doe 1 also claims that Howard is responsible for her February 2016 assault.  Doe 1 posted her frustrations about Howard's handling of her report on Twitter.  *Id.* ¶ 61.  According to Doe 1, another Howard student, Doe 2, responded to her Tweet and said she reported the same student for assault and harassment in October 2015.  *Id.* ¶¶ 64-65.  In April 2016, the Title IX Coordinator completed her investigation into Doe 2's report of sexual assault involving Assailant 1, found him responsible for non-consensual sexual contact with Doe 2, and suspended him from campus for two years.  *Id.* ¶ 72.  Doe 1 suggests that Howard should have expelled or otherwise restricted Assailant 1 before February 7, 2016, when he assaulted her.  *Id.* at ¶¶ 67, 82.

---

[1] In setting out Doe 1's claims – as well as the claims of the other Plaintiffs – the Complaint includes detail after detail, laying out every single interaction with Howard's administration, sometimes providing a day by day chronology.  The purpose of including this level of detail is unclear – Plaintiffs cannot plead deliberate indifference based on girth alone.  Moreover, pleading this type of minutia is not appropriate under Federal Rule of Civil Procedure 8.  *See Witherspoon v. Philip Morris, Inc.*, 964 F. Supp. 455, 467-68 (D.D.C. 1997) (striking portions of the complaint on the ground that they violated Rule 8 because, although most of those portions did "contribute to pleading the causes of action," they were "unnecessarily voluminous" and contained "unnecessary evidentiary information," making the complaint "neither short nor plain").  Thus, if the Court should deny Howard's motion on the merits, it should dismiss the Complaint with leave to re-plead consistent with Rule 8.  In any event, as set out above, Doe 1's concerns about her RA position were resolved before the completion of the summer break, and she was able to resume her RA duties immediately upon her return.

B.     **Jane Doe 2**

Jane Doe 2 alleges that, on May 1, 2015, she was raped by another Howard student whom she was dating, Assailant 1.  Compl. ¶ 111.  She did not immediately report the assault, believing (incorrectly) that Assailant 1 was set to graduate in the Spring of 2015.  *Id.* ¶¶ 112-13.  She claims that when she returned in the Fall of 2015, her assailant continued to harass her on a regular basis, causing her to report the assault.  *Id.* ¶¶ 113-14.

On October 17, 2015, Doe 2 reported her assault to the D.C. Police, who then reported it to Howard.  *Id.* ¶ 114.  On October 22 and 27, 2015, Doe 2 met with Howard's Title IX Coordinator to discuss her report.  *Id.* ¶ 115.  Doe 2 alleges that she asked Howard to move her alleged assailant to another dormitory, but the Title IX Coordinator explained that he could not be removed until the investigation was complete.  *Id.* ¶ 116.  Instead, Doe 2 decided to move to a different dormitory and Howard told her that she would not be charged for the move.  *Id.* ¶ 118.  She alleges that Howard later did charge her for the move.  *Id.* ¶ 124.

While the Complaint alleges that Assailant 1 continued to harass Doe 2 prior to her reporting the assault, she does not allege that she suffered any harassment ***after*** Howard was put on notice of the assault.[2]  In fact, Doe 2 does not allege that she ever saw Assailant 1 after making her report.  Nevertheless, Doe 2 alleges that she chose to leave Howard at the end of that fall 2015 semester "because she was afraid to leave her dorm room and run into her assailant on campus."  *Id.* ¶ 123.

In March 2016, Doe 2 alleges that she saw Jane Doe 1's Twitter post identifying the student who assaulted her as the same student that Doe 2 reported.  *Id.* ¶ 129.  In April 2016,

---

[2]  In fact, after Howard was put on notice of the claims involving Assailant 1, a no contact order was issued and he was suspended from his RA position.

Doe 2 received the investigatory report from the Title IX Coordinator, which found Assailant 1 responsible for non-consensual sexual contact with Doe 2 and suspended him from campus for two years. *Id.* ¶ 132. Nevertheless, Doe 2 officially withdrew from Howard in May 2016 and enrolled in another program. *Id.* ¶¶ 126-27. Doe 2 also alleges that Howard's financial aid office (which is not alleged to have known of her Title IX case) placed holds on her account after removing her grant and scholarship information from her account, which allegedly led to frustrations with getting her academic transcript for transfer applications, but that Howard removed those holds and she was able to enroll in an online program. *Id.* ¶¶ 124-25.

C.      **Jane Doe 3**

Jane Doe 3 is a student at Howard on a scholarship from the Reserve Officers' Training Corps ("ROTC"). Compl. ¶ 139. In April 2014, Doe 3 began a consensual romantic relationship with a Howard University campus police officer who eventually became abusive and assaulted her. *Id.* ¶¶ 141-142. In November 2014, Doe 3 reported her abuse to a close confidant who reported it to Howard's campus police. *Id.* ¶ 144. Plaintiff does not allege that Howard had any advance knowledge of her relationship with the campus police officer, or that he was abusive towards her.

Upon receiving her report, a Howard campus police investigator took Doe 3 to the D.C. Police to report her assault. *Id.* ¶ 145. Howard's Title IX Coordinator and the Director of Howard's Interpersonal Violence Prevention Center ("IVPC") also accompanied Doe 3 while she made her report to the police. *Id.* ¶¶ 145-146. Doe 3 heard at some point from campus police that the officer involved was terminated from Howard. *Id.* ¶ 212. She does not allege that, following her report to Howard, she ever saw her alleged assailant again.

The Title IX Coordinator immediately offered Doe 3 academic accommodations and counseling. *Id.* ¶ 147. Doe 3 declined academic accommodations, but said she was

interested in counseling.  *Id.* ¶ 147.  Doe 3 alleges that for six weeks or so, from January 2015 to mid-February 2015, she contacted several administrators within Howard's IVPC and Counseling Center to set up individual counseling services and told them that she was depressed and suicidal, but they either did not immediately get back to her or only offered her group counseling at times that conflicted with her work schedules.  *Id.* ¶¶ 150-55, 159-61, 186.

In April 2015, Doe 3 requested academic accommodations from the Dean of Special Student Services.  In response, the Dean gave her a letter to give to her professors.  *Id.* ¶¶ 167-69.  All but two of her professors granted her extensions of time after receiving the letter. *Id.* ¶ 170.  Despite alleging that two of her professors "refused to provide or engage in a conversation regarding an academic accommodation" (*id.* ¶ 173), Doe 3 alleges that each of those professors explained it was too late in the semester for her to take any steps to improve her grade and advised that she withdraw from their classes.  *Id.* ¶ 171.  The Dean of Special Student Services also explained to Doe 3 that the professors had the final say regarding whether they would provide academic accommodations to a student.  *Id.* ¶¶ 173-74.  Doe 3 alleges that she failed her classes with those two professors.  *Id.* ¶ 176.

On March 30, 2016, Doe 3, her attorney, and her ROTC advisor (who was associated with a different University) met with the Title IX Coordinator about whether she could retake her failed classes.  *Id.* ¶ 184.  The Title IX Coordinator again explained to Doe 3 that she failed the two classes because she asked for help too late in the semester, and affirmed that the University could not "force" professors to provide accommodations.  *Id.*  Doe 3 requested that the professors change her failing grades to "Incompletes" and give her make-up work.  *Id.*  On April 26, 2016, Howard's counsel explained that Doe 3 did not qualify for an

"Incomplete" under Howard's academic policy because she did not complete the required 60-80% of the classwork in the two classes she failed. *Id.* ¶ 191.

In June 2016, while attempting to register for summer classes, Doe 3 says she saw that her financial aid had been reduced and eventually dropped to a $0 balance. *Id.* ¶¶ 201-202. The financial aid office (which is not alleged to have known about her Title IX claim) explained that Doe 3 used her maximum aid eligibility during the fall and spring semesters, and had no financial aid left to use for summer classes. *Id.* ¶ 204. Doe 3 continued as a student at Howard and did not lose her ROTC scholarship. *Id.* ¶ 211.

**D.     Jane Doe 4**

Jane Doe 4 was a Howard student in the ROTC program. Compl. ¶ 221. Doe 4 alleges she was raped on March 9, 2016 by another Howard student. *Id.* ¶ 223. On March 10, 2016, Doe 4 reported the rape to Howard's Title IX Coordinator. *Id.* ¶ 225. The Title IX Coordinator advised Doe 4 about available counseling services and the option to change her assigned dormitory, and gave Doe 4 a set of written materials. *Id.* Doe 4 asked to change dormitories and for a campus protective order against the respondent. *Id.* ¶¶ 226, 228. A week later (and after the completion of a week-long spring break), Howard had moved Doe 4 to a new dormitory. *Id.* ¶ 232. A protective order was also issued against the respondent. *Id.* ¶ 251.

On March 21, 2016, Doe 4 asked the Dean for Special Student Services for academic accommodations in four courses. *Id.* ¶ 234. On March 23, 2016, the dean met with Doe 4 and her attorney, and provided Doe 4 with an academic accommodation letter. *Id.* ¶¶ 236-37. Doe 4's biology professor granted Doe 4 a two-day extension of time to take her exam. *Id.* ¶ 238. Unhappy with that extension, Doe 4's attorney emailed the professor and the Dean for Special Student Services requesting a week-long extension, until March 30. *Id.* ¶ 239. Doe 4 alleges that the dean agreed to contact the professor about taking the exam on March 30, but

never did so.  *Id.* ¶¶ 240-43.  In any event, the professor allowed Doe 4 to take the exam the next

day, on March 31 (*id.* ¶¶ 242-43), which was even longer than the extension of time she

requested.

Doe 4 does not allege that the respondent harassed her or attempted to interact

with her after she reported him.  In April 2016, Doe 4 complained that the respondent was not

following the protective order because she had seen him "[o]n at least four occasions in less than

three weeks" in the cafeteria or walking around campus between classes.  *Id.* ¶ 244.  Doe 4 asked

Howard to develop a coordinated schedule to ensure that she never saw the respondent at the

cafeteria, fitness center, and other common facilities on campus.  *Id.* ¶¶ 245, 248, 250.  On April

14, 2016, the Title IX Coordinator explained that the respondent was not required to leave an

area or change his direction solely because Doe 4 was there, and that the protective order only

restricted his ability to speak directly to Doe 4 or indirectly to her through others.  *Id.* ¶ 252.  The

Title IX Coordinator also provided Doe 4 with information for counseling services.  *Id.*

In August 2016, Doe 4 says she learned through mutual friends that she and the

respondent were assigned to the same dormitory for the upcoming semester.  *Id.* ¶ 277.  On

August 8, Doe 4's attorney notified Howard's counsel of the issue, who began working on a

resolution the next day.  *Id.* ¶¶ 279-80.  Nine days later, on August 17, 2016, before Doe 4

moved back to campus, Howard confirmed that the respondent had been assigned to different

housing.  *Id.* ¶ 285.

On August 23, 2016, prior to the start of the Fall semester, Howard notified Doe 4

that the respondent had been found responsible for sexual violence and suspended for one

semester.  *Id.* ¶ 287.  In October 2016, Doe 4 alleges that she saw the respondent at a pep rally on

campus.  *Id.* ¶ 288.  When Doe 4 notified campus police and showed them a copy of the finding

letter, they removed him from the stadium within the hour. *Id.* ¶ 289. Doe 4 does not allege that

he approached her or attempted to interact with her. Doe 4 remained a student at Howard and

did not lose her ROTC scholarship. *Id.* ¶ 299.

      E.     **Jane Doe 5**

      Jane Doe 5 alleges that she was raped by another Howard student at a graduation

party at the end of the spring semester, on April 25, 2015. Compl. ¶ 301. On April 26, 2015,

Doe 5 reported the incident to the D.C. Police. *Id.* ¶ 302. A D.C. Police detective told her to

return home to Michigan to avoid any chance of retaliation from the assailant. *Id.* ¶ 303.

      A few days later, on April 29, 2015, Doe 5 reported her sexual assault to

Howard's Title IX Coordinator. *Id.* ¶ 304. On the same day, she received notice that she could

not graduate that semester because she was six credits short of the graduation requirement. *Id.* ¶

305. Doe 5 does not allege that this notification had any connection to her reported assault, and

it did not.

      That same day, on April 29, Doe 5 met with Howard's Provost and requested an

accommodation to take any remaining credits she needed at a different school closer to home in

Michigan. *Id.* ¶ 307. Doe 5 then went home to Michigan. *Id.* ¶ 309. On June 2, Howard's

counsel advised Doe 5 and her attorney that the University typically requires students to take

their last 30 academic credits at the University, but the Provost was looking into waiving that

requirement for Doe 5. *Id.* ¶ 416. The Provost gave Doe 5 permission to take summer courses in

Michigan, which she completed. *Id.* ¶¶ 317, 324. At that point, there was no need for Doe 5 to

take any further classes or to return to Howard's campus for academic reasons.

      On July 1, 2015, Doe 5 sent her written statement of claims to the Title IX

Coordinator. *Id.* ¶ 320. On July 9, the Title IX Coordinator responded that she had been

unsuccessful in contacting the respondent, but could reach out to other witnesses. *Id.* ¶ 321. Doe

5 claims that in response to her concerns that the respondent would transfer to another school to avoid disciplinary action, Howard granted her request to place a hold on his account. *Id.* ¶¶ 322-23. On October 1, 2015, Howard notified Doe 5 that the respondent had returned to campus and that her investigation was moving forward. *Id.* ¶ 327. On December 9, 2015, the Title IX Coordinator informed Doe 5 that the investigation found the respondent responsible for sexual violence and suspended him from campus for two years. *Id.* ¶ 334.

On September 14, 2015, Doe 5 sent the Provost her summer course transcript. *Id.* ¶ 325. On April 25, 2016, Howard notified Doe 5 that her summer courses were accepted and that she was eligible to graduate. *Id.* ¶ 346.

## III.    LEGAL STANDARDS FOR A MOTION TO DISMISS

In deciding a Rule 12(b)(6) motion, the court need not accept, without more, legal conclusions masquerading as facts. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). The allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1947 (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiffs must "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

## IV.    ARGUMENT

### A.    The Court Should Dismiss Counts I, III, V, VI, and VII Because Plaintiffs Do Not State a Title IX Claim For Gender Discrimination

#### 1.    Title IX Provides a Damages Claim Only for Intentional Gender Discrimination:  An Institutional Decision Not to Address Known, Ongoing Harassment.

Given the Plaintiffs' attempt to drastically expand Title IX, it is important to begin with first principles.  Title IX provides:  "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  While the statute does not provide for a civil remedy, the Supreme Court implied a narrow right of action for damages in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) and *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999).  According to this Supreme Court precedent, in the context of sexual harassment between members of the school's community, a cause of action for damages is available only where the school ***itself*** has engaged in intentional gender discrimination, by making an affirmative decision not to address known, ongoing harassment in its educational programs, thus allowing the harassment to continue.  Title IX does not require a school to provide a particular ***remedy*** in response to one student's sexual assault of another student.

In *Gebser*, the Supreme Court considered a Title IX claim premised on a school teacher's sexual relationship with an eighth grade student.  In finding that the school district could not be liable for the teacher's conduct, the Supreme Court held that "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond."

*Gebser*, 524 U.S. at 290. "[T]he response must amount to ***deliberate indifference*** to discrimination. . . .The premise, in other words, is ***an official decision by the recipient not to remedy the violation.***" *Id.* (emphasis added). The Supreme Court declined to impose liability based on principles of *respondeat superior* or constructive notice of the ongoing sexual relationship, *id.* at 285, explaining that any standard lower than deliberate indifference (such as negligence), would create "a risk that the recipient would be liable in damages not for its own official decision but instead for its employee's independent actions." *Id.* at 290-91. Although the school district in *Gebser* had knowledge of other inappropriate comments by the teacher involved, because it did not have actual knowledge of the sexual relationship while it was occurring, it could not be liable under Title IX. *Id.* at 292.

The next year, in *Davis*, the Supreme Court considered whether a school district could be liable for a fifth grader's continual sexual harassment of another student. Guided by the principle from *Gebser*, *Davis* affirmed that a private right of action under Title IX is available only "where the funding recipient engages in ***intentional*** conduct that violates the clear terms of the statute." 526 U.S. at 641-42 (emphasis added). Emphasizing the narrowness of the cause of action, the *Davis* Court held that schools can be liable only for their ***own*** actions that amount to intentional gender discrimination – meaning (1) "the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities," *id.* at 632; (2) the deliberate indifference of the school "'cause[s] [students to undergo' harassment or 'make[s] them liable or vulnerable' to it[,]'" *id.* at 645; and (3) the harassment caused by the school is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit" provided by the school. *Id.* at 633.

*Davis* thus makes clear that schools are not required to remedy past harassment, they are only required to address known, ongoing harassment in a way that is not clearly unreasonable:

> The dissent consistently mischaracterizes [the "clearly unreasonable"] standard to require funding recipients to "remedy" peer harassment. . . . Title IX imposes no such requirements.  On the contrary, the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable.

*Davis*, 526 U.S. at 648-49; *see also Rosa H. v. San  Elizario Indep. Sch. Dist.*, 106 F.3d 648, 661 (5th Cir. 1997) ("[T]he school district can be liable, if at all, only for the damages caused by its intentional acts of discrimination.  If the conduct has ceased by the time a supervisory employee . . . learns of it, there is no liability in a private suit for the conduct based on some personal failure to take 'proper remedial action' thereafter."); *Schaefer v. Las Cruces Public Sch. Dist.*, 716 F. Supp. 2d 1052, 1081 (D.N.M. 2010) (plaintiff must show school "was deliberately indifferent to the ongoing wrongful conduct").

### a.    *Plaintiffs Must Plead and Prove that the Defendant was Deliberately Indifferent*

Deliberate indifference occurs "only where the [school's] response to the harassment or lack thereof is ***clearly unreasonable*** in light of the known circumstances."  *Davis*, 526 U.S. at 648 (emphasis added).  In other words, the school's response must be so unreasonable that one can infer there was "an official decision by the recipient not to remedy" the harassment.  *Gebser*, 524 U.S. at 290; *see Doe v. Willits Unified Sch. Dist.*, 473 F. App'x 775, 776 (9th Cir. 2012) ("To meet this high standard there must, in essence, be an official decision not to remedy the violation and this decision must be clearly unreasonable."); *Oden v. Northern Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) (equating "clearly unreasonable" determination to whether school made "an official decision . . . not to remedy the violation").

"'Deliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse." *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 508 (6th Cir. 1996).

As such, a school's alleged failure to follow its internal policies and procedures does not rise to the level of deliberate indifference. *See Gebser,* 524 U.S. at 291 (holding that a school's failure to adopt grievance procedures for resolving sexual harassment claims does not itself constitute discrimination under Title IX); *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.,* 647 F.3d 156, 169 (5th Cir. 2011) ("A district's 'failure to comply with [its] regulations . . . does not establish the requisite . . . deliberate indifference.'"); *Facchetti v. Bridgewater Coll.,* 175 F. Supp. 3d 627, 638 (W.D. Va. 2016) ("[A] Title IX defendant's failure to comply with its own policy does not prove deliberate indifference, under clear Supreme Court precedent."); *Doe v. Bd. of Educ. of Prince George's County*, 982 F. Supp. 2d 641, 657 (D. Md. 2013) ("[T]he Supreme Court has held that the failure to follow sexual harassment grievance procedures does not prove deliberate indifference under Title IX.").

Similarly, mere delays in a school's disciplinary process do not constitute deliberate indifference. *Oden*, 440 F.3d at 1089 (holding that college's nine-month delay in proceedings was not deliberately indifferent, even if it may have been negligent and in violation of school's own policy); *Karasek v. Regents of the Univ. of Cal.*, No. 15-cv-03717-WHO, 2016 U.S. Dist. LEXIS 98949, at *45-46 (N.D. Cal. July 28, 2016) (finding allegations that the university failed to update plaintiff during its investigation and disciplinary process were, at most, "nonactionable negligence, laziness, or carelessness," and not deliberate indifference); *Staehling v. Metro. Gov't*, No. 3:07-0797, 2008 U.S. Dist. LEXIS 91519, at *35 (M.D. Tenn. Sept. 12, 2008) ("While the alleged failure of the school in its follow-up to the . . . incident may

suggest negligence, this is not sufficient to me[e]t the deliberate indifference standard under Title IX.").

Finally, the *Davis* Court made clear that Title IX does not entitle complainants to make particular remedial demands. The Court admonished the lower courts against second-guessing decisions of school administrators, and stressed that its holding does not require institutions to "purg[e] their schools of actionable peer harassment or that administrators must engage in particular disciplinary action," nor does it require schools to expel every student accused of sexual misconduct. 526 U.S. at 648; *see Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000) (stating "[v]ictims do not have a right to particular remedial demands" under Title IX); *Facchetti*, 175 F. Supp. 3d at 638 (recognizing "ample authority holding that neither a school's negligence in addressing a sexual assault, nor its failure to provide the remedy wanted by the victim, constitutes deliberate indifference") (citing cases).

"In an appropriate case, there is no reason why courts, on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649; *see Bello v. Howard Univ.*, 898 F. Supp. 2d 213, 224 (D.D.C. 2012) (dismissing Title IX claim in part for failure to plead facts showing deliberate indifference by university).

**b.**    ***Plaintiffs Must Plead and Prove that the School's Deliberate Indifference Caused the Plaintiffs to Suffer Additional Severe and Pervasive Harassment***

A school is only liable where it "subjects" a student to harassment, meaning that the school's deliberate indifference "effectively 'cause[s]' the discrimination" for which plaintiff seeks damages. *Davis,* 526 U.S. at 642-43, 644. Thus, at a minimum, the deliberate indifference must "cause [students] to undergo" harassment or "make them liable or vulnerable to it." *Id.* at 645. As one district court has noted, "[t]he relationship between causation and deliberate indifference is vitally important in a student-on-student harassment case . . . . [because] plaintiffs

-17-

do not seek to recover against the perpetrator of the harassment[;] [r]ather they bring suit against the entity receiving federal funds for its own decision to remain idle . . . ." *Moore v. Murray State Univ.*, No. 5:12-CV-00178, 2013 U.S. Dist. LEXIS 33768, at *10 (W.D. Ky. Mar. 12, 2013).

Because schools are liable under Title IX only for damages caused by their own discrimination, a school is liable only for harm that flows from harassment after it is on notice of the harassment, and which is caused by the school's deliberate indifference in failing to stop it. *Rosa H.*, 106 F.3d at 661.  A damages claim under Title IX does not exist for failing to remedy the effects of past harassment.  *See KF v. Monroe Woodbury Central Sch. Dist.*, No. 12-CV-2200 (ER), 2012 U.S. Dist. LEXIS 60341, at *30 (S.D.N.Y. Apr. 30, 2012) (denying preliminary injunction under Title IX and finding school's response was not clearly unreasonable, because plaintiff faced no further harassment after making her report and school had no duty to remedy "the psychological effects of the alleged behavior to which she was previously subjected").

Thus, most courts – including within this district – have held that plaintiffs must allege that the institution's acts of deliberate indifference caused them to suffer additional harassment after the school learns of the incident in question.  *See, e.g., Blue v. Dist. of Columbia*, 850 F. Supp. 2d 16, 35-36 (D.D.C. 2012) (dismissing Title IX claim where "[f]inally but significantly, Plaintiff 'does not allege that further sexual harassment occurred as a result of [the school's] deliberate indifference'") (quoting *Escue v. Northern OK College*, 450 F.3d 1146, 1155 (10th Cir. 2006)), *aff'd* No. 10-1504 (JEB), 2015 U.S. App. LEXIS 22737 (D.C. Cir., Dec. 29, 2015); *Bello v. Howard Univ.,* 898 F. Supp. 2d 213, 224 (D.D.C. 2012) ("[T]here exists no basis on which this Court could reasonably infer that once Defendant was on notice, it . . . failed to take remedial measures ***or that such failure resulted in harm to any of the Plaintiffs***")

(emphasis added); *see also Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) ("There is no evidence that any harassment occurred after the school district learned of the plaintiffs' allegations. Thus, under *Davis*, the school district cannot be deemed to have 'subjected' the plaintiffs to the harassment."); *Montoya v. N.M. Inst. of Mining & Tech. Bd. of Regents*, No. 2:16-cv-00386-MCA-SMV, 2017 U.S. Dist. LEXIS 40641, at *17 (D.N.M. Mar. 21, 2017) (finding no deliberate indifference where "perhaps most significantly, the Institute's response did not lead to further incidents of harassment"); *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 827 (M.D. Tenn. 2014) ("[B]ecause plaintiff did not continue to experience sexual harassment once he put defendant on notice of [his harasser's] conduct, there is no basis to find defendant's response to plaintiff's sexual harassment report amounted to deliberate indifference."); *Lopez v. Regents of the Univ. of Cal.*, No. C-13-2811 EMC, 2013 U.S. Dist. LEXIS 173228, at *49-50 (N.D. Cal. Dec. 10, 2013) (dismissing Title IX claim for failure to allege that deliberate indifference subjected plaintiff to further discrimination); *Moore*, 2013 U.S. Dist. LEXIS 33768, at *13-14 (finding Title IX failed as a matter of law where, "even if MSU was deliberately indifferent to [plaintiff], there are no allegations that the indifference caused her to experience further or additional harassment").[3]

---

[3] It is true that some cases, including one from this district, have found that mere "vulnerability" to further harassment is sufficient. *See Wells v. Hense*, No. 1:16-cv-0901-ESH, 2017 U.S. Dist. LEXIS 9332, at *12 (D.D.C. Jan. 24, 2017); *Karasek v. Regents of the Univ. of California*, No. 15-cv-03717-WHO, 2015 U.S. Dist. LEXIS 166524, at *42-43 (N.D. Cal. Dec. 11, 2015) (discussing cases); *Takla v. Regents of the Univ. of Cal.*, 2:15-cv-04418-CAS(SHx), 2015 U.S. Dist. LEXIS 150587, at *10, 17 (C.D. Cal. Nov. 2, 2015). *Wells*, however, is distinguishable. Unlike Plaintiffs here, the plaintiffs in *Wells* alleged that they stopped going to class due to further harassment after reporting their assaults, including that they were "ostracized, called names and otherwise bullied by their peers." 2017 U.S. Dist. LEXIS 9332, at *6, 14. Moreover, *Wells* involved students in high school, who were more "vulnerable" to further harassment in small classrooms with their harassers while at school. By contrast, Plaintiffs here attend a university with thousands of students on a 250-acre campus. *See Davis*, 526 U.S. at 649 (noting "[a] university might not, for example, be expected to exercise the same degree of control over its students that a grade school would enjoy").

Further, *Wells* and the other cases that do not require further harassment are inconsistent with the Supreme Court's admonishment that schools can be held liable only for harm relating to **gender discrimination** caused by

(continued...)

And, the harassment *caused by the University* must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650.  Thus, particularly on a campus of some 10,000 students, the occasional sightings or encounters with an alleged harasser around campus cannot alone be harassment sufficiently "severe, pervasive, and objectively offensive" for Title IX liability to attach.  *See M.D. v. Bowling Green Indep. Sch. Dist.*, No. 1:15-CV-00014-GNS-HBB, 2017 U.S. Dist. LEXIS 11504, at *21-22 (W.D. Ky. Jan. 27, 2017) (granting summary judgment against Title IX claim that school was liable for its "lack of remedial measures" in response to plaintiff's report that she was suffering from "psychological harm" due to the respondent's "mere presence" on campus); *Ha v. Northwestern Univ.*, No. 14-cv-00895, 2014 U.S. Dist. LEXIS 160046, at *7-8 (N.D. Ill. Nov. 13, 2014) ("[O]ccasional glimpse of [harasser] on the campus" and "claims that knowledge of [harasser's] presence on the campus caused [plaintiff] considerable grief" are not actionable under Title IX); *O'Hara v. Colonial Sch. Dist.*, No. 99 CV 399, 2002 U.S. Dist. LEXIS 12153, at *18 (E.D. Pa. Mar. 25, 2002) ("Plaintiffs allege nothing more than that John Doe could occasionally be found in the same vicinity as [assaulted student] and that he would stare at her.  These are not claims of

---

(continued...)

their *own* deliberate indifference, and are not responsible for remedying past harassment.  As one federal court has held, allowing a victim to sue simply because she feels more vulnerable to harassment would be fundamentally inconsistent with *Davis*:  "*Davis* holds to the contrary.  There must [be] a direct causal connection between harassment and a school district's deliberate indifference, such that the school district can be said to 'expose' its students to harassment or 'cause' them to undergo it 'under' the recipient's programs. . . . The Supreme Court has never endorsed a theory that allows recovery of damages because of a fear of future harassment or a feeling of vulnerability.  Plaintiffs tear out of context the Supreme Court's use of the word 'vulnerable' in explaining how a school district's deliberate indifference might 'subject' students to harassment. . . . The Court was merely explaining that a school district violates Title IX when its deliberate indifference exposes students to sexual harassment that could have been prevented by reasonable measures. The Court did not hold, or even intimate, that a school district must pay damages for a student's apprehension of future sexual assault that never materializes."  *Noble v. Branch Intermediate Sch. Dist.*, No. 4:01cv 58, 2002 U.S. Dist. LEXIS 19600, at *67 (W.D. Mich. Oct. 9, 2002) (internal citations and quotation marks omitted).

sexual harassment actionable under Title IX.").  To hold otherwise would essentially require

schools to immediately expel anyone accused of sexual misconduct, lest the school run the risk

that the two students may encounter each other while charges are pending.  *But see Davis*, 526

U.S. at 648 (holding that there is no obligation to expel students accused of sexual assault).

>    2.    <u>Plaintiffs Plead No Facts Showing that Howard's Response to Their
>          Claims Amounts to Deliberate Indifference or Caused Them to Suffer
>          Additional Harassment.</u>

None of the Plaintiffs pleads facts sufficient to establish that Howard engaged in

intentional gender discrimination.  Indeed, as described more fully below, each of the Plaintiffs

admits that Howard took action in response to her claim of assault, each of the alleged assailants

was removed from the Howard community, and none of the Plaintiffs claims that she suffered

any further harassment once Howard was put on notice of her specific claims.  Instead, Plaintiffs

take issue – in paragraph after paragraph after paragraph – with Howard's failure to provide

them with the particular remedies they requested, be it counseling, academic accommodations, or

a hearing within a specified time period.

But as explained above, for purposes of civil liability, Title IX does not require

schools to take any particular action to remedy past harassment; rather, a school's obligation is to

respond to ongoing harassment in its programs and take appropriate measures to stop it or

prevent it from continuing.  *See Vance*, 231 F.3d at 260 ("[Schools are] not required to 'remedy'

sexual harassment nor ensure that students conform their conduct to certain rules[.]"); *Brodsky v.

Trumbull Bd. of Educ.*, No. 3:06cv1947 (PCD), 2009 U.S. Dist. LEXIS 8799, at *24 (D. Conn.

Jan. 30, 2009) ("The Supreme Court has explained that it is a mischaracterization of the standard

to suggest that funding recipients are required to 'remedy' peer harassment in order to avoid

liability under Title IX."); *accord Montoya*, 2017 U.S. Dist. LEXIS 40641, at *17-18 (rejecting

arguments that school could have conducted a more elaborate investigation and imposed harsher

discipline because "neither the Court nor [Plaintiff] is entitled to dictate the Institute's response to [the respondent's] act of sexual harassment").  Thus, even if Howard failed to do all the things Plaintiffs say it failed to do, that would not violate Title IX.

At the end of the day, none of the Plaintiffs pleads any facts plausibly suggesting that Howard's actions were motivated by gender bias.  Plaintiffs allege only that they are female students (Compl. ¶¶ 13-17); that Howard's response to their reports of sexual assault endangered and deprived all female students on campus of access to educational opportunities (*id.* ¶¶ 12, 337); and that Howard's "unlawful acts" caused each of them to be "denied or limited in her ability to participate in or benefit from the school's educational programs or activities on the basis of sex" (*id.* ¶¶ 359, 378, 387, 388, 401, 413, 425, 434).  These conclusory statements are not enough.  They identify no comments made or actions taken by Howard ***because*** Plaintiffs are female.[4]

Courts in this district have dismissed Title IX claims absent allegations tying the alleged discriminatory conduct to a plaintiff's gender.  In *Holloway v. Howard Univ.*, 206 F. Supp. 3d 446 (D.D.C. 2016), the court dismissed the plaintiff's Title IX claim after finding "no factual allegations to link the University's decision to deny her readmission to her gender."  *Id.* at 452.  The court further noted, "it is not incumbent upon the University on a Rule 12(b)(6) motion to explain or defend its reasons for denying plaintiff readmission . . . .  Rather, it is plaintiff's burden to state a plausible claim under Title IX.  Here, absent allegations that the University's decision was based on plaintiff's gender, the claim fails."  *Id.*; *see Delbert v. Duncan*, 923 F.

---

[4] The Complaint references a handful of alleged comments by Howard administrators and staff, none of which relates to Plaintiffs' gender.  Compl. ¶ 56 (alleging Title IX Coordinator asked Doe 1 if she had discussed her alleged rape in a group text message with her friends); ¶ 71 (alleging a dean told Doe 1 "you embarrassed your family by doing that" in reference to her Twitter post); ¶ 164 (alleging counseling center receptionist told Doe 3 to be careful with her records because people would "judge her" for her file).

Supp. 2d 256, 261 (D.D.C. Feb. 14, 2013) (dismissing Title IX claim where the "plaintiff[]

mere[ly] mention[s] his sex" without "factual allegations set forth in the complaint to suggest

discrimination on this basis").

None of the Plaintiffs alleges sufficient facts to overcome a motion to dismiss:

### a.      *Jane Doe 1 Fails to State a Discrimination Claim*

Jane Doe 1 claims that Howard is liable for both (a) causing her alleged sexual

assault, and (b) responding with deliberate indifference to her report of sexual assault.  Neither

claim is plausible.

### (1)      Howard is Not Liable for Causing Plaintiff's Assault

First, Doe 1 alleges that Howard effectively caused her sexual assault in February

2016 because it received a report in October 2015 that the same student had previously assaulted

another student, Jane Doe 2.  Compl. ¶¶ 64, 66-67, 82, 353.  There is no authority for the

proposition, however, that a college or university of 10,000 students can be liable for the actions

of one of its students, simply because it is on notice of a single *allegation* that the student had

engaged in prior misconduct on one other occasion.[5]  To the contrary, in *Doe v. Ohio State Univ.*

*Bd. of Regents*, No. 2:04-CV-0307, 2006 U.S. Dist. LEXIS 70444 (S.D. Ohio Sept. 28, 2006),

the court found that the university was not responsible under Title IX for the plaintiff's sexual

assault despite receiving a report that the same respondent attempted to sexually assault another

student.  The court reasoned that, "at the time of the sexual assault on Plaintiff, there were no

definite findings against [the respondent].  Rather, there were just allegations against him.  [The

---

[5] Doe 1 also alleges that the respondent had transferred to Howard from another university after he was accused of similar sexual misconduct.  Compl. ¶ 73.  But the Complaint does not allege that Howard had actual knowledge of that prior accusation, and any suggestion that Howard "should have known" is (1) not supported by any facts and, anyway, (2) is not enough under Title IX.  *Davis*, 526 U.S. at 642.

University] therefore acted reasonably under the circumstances, that there were only pending allegations against [the respondent] at the time." *Id.*, at *33.

Similarly, other courts have rejected attempts to hold schools liable based on the fact that a respondent had a prior history of misconduct, noting that "the question [] is whether [the institution's] knowledge of these prior incidents constitutes 'actual knowledge' of misconduct that would create a risk that Plaintiff would be sexually assaulted that was 'so great that they [were] almost certain to materialize if nothing [were] done.'" *Doe v. Blackburn Coll.*, No. 06-3205, 2012 U.S. Dist. LEXIS 24797, at *24 (C.D. Ill. Feb. 27, 2012) (citing *Hansen v. Bd. of Trs. of Hamilton Southeastern Sch. Corp.*, 551 F.3d 599, 605-06 (7th Cir. 2008)); *see McCoy v. Bd. of Educ.*, 515 F. App'x 387, 392 (6th Cir. 2013) ("[T]he propriety of the [school's] response is measured by the known circumstances—*i.e.,* there is a connection between what school officials know and whether their response is clearly unreasonable."); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 363 (6th Cir. 2012) (finding in Title IX claim the fact student had assaulted another student did not show deliberate indifference as to the plaintiff, since "[i]ncidents involving third-party victims lack relevance unless the plaintiff can show that the incidents deprived her of such access"); *Schaefer*, 716 F. Supp. 2d at 1081 (finding school not liable for student's sexual assault under Title IX where it was merely "put on notice that [the assault] was a possibility" and that "[n]either the Supreme Court nor the Tenth Circuit have said that a school district would be liable if it was aware that sexual harassment could, might, or would likely occur in the future"); *Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1356 (M.D. Ga. 2007) ("The mere fact that students at [the university] have been victims of sexual assault in the past is, unfortunately, not uncommon for a University setting.  Past incidents of

assault alone—without any evidence of deliberate indifference on [the university's] part—are not enough to trigger Title IX liability[.])."

Doe 1 does not plead any facts that would make it plausible to believe that Howard knew that Doe 2's alleged assailant would engage in the same conduct again, such that Doe 1's alleged assault was "almost certain to materialize if nothing [were] done.'" *Doe v. Blackburn Coll.*, 2012 U.S. Dist. LEXIS 24797, at *24. Assailant 1 allegedly assaulted Doe 2 in the course of a consensual romantic relationship, and no facts are pleaded suggesting that the facts of the claim involving Doe 2 showed that Assailant 1 was a risk to other students. To the extent that Doe 1 suggests that Howard should have prevented her alleged assault by removing the respondent from campus, the Supreme Court in *Davis* made clear that schools are not required to expel every student accused of sexual misconduct, or comply with a complainant's demand that a respondent be expelled. *Davis,* 526 U.S. at 648. Moreover, the University had not yet completed its investigation into Doe 2's report at the time of Doe 1's alleged assault in February 2016. *See* Compl. ¶ 130 (alleging Title IX Coordinator was still investigating information provided by Doe 2 in March 2016). Thus, (while Howard did take interim action against Assailant 1), expelling Assailant 1 before he was found responsible would have been premature and may well have resulted in a claim from Assailant 1 that Howard violated his due process rights.[6]

---

[6] Further, as in *Doe v. Ohio State*, Doe 1 here does not plead facts sufficient to show that the assault occurred in a program that was reasonably within the University's control, such that it could have had a duty to prevent it. *See Ohio State*, 2006 U.S. Dist. LEXIS 70444 at *34 ("OSU cannot possibly be expected to control the social activities of each of its more than 50,000 students. In this case, the assault did not take place in a classroom, during a school-sponsored event, or even while Plaintiff and [respondent] were engaged in educational pursuits. Instead, the assault took place in the early hours of the morning after Plaintiff returned from a night out drinking. She contacted [the respondent] and they agreed to meet. While the contact between Plaintiff and [the respondent] began as consensual that night, unfortunately things changed. This, however, is not the type of context that is subject to OSU's control**,** nor should it be expected to be.").

(2)   Howard Was Not Deliberately Indifferent to Jane Doe 1's
Report of Sexual Assault

Doe 1 does not plead any facts suggesting that Howard was deliberately

indifferent to her reported assault.  To the contrary, the Complaint itself shows that Howard

promptly responded to her report.  Campus police connected Doe 1 to the D.C. Police, the Title

IX Coordinator helped draft Doe 1's written statement to start the investigation process, and the

University transferred the respondent to a different dormitory.  Compl. ¶¶ 51, 52, 55.  That

Howard did not also remove the respondent from Doe 1's classes does not constitute deliberate

indifference.  *Id.* ¶ 54.  *See Doe v. Bd. of Educ.*, 982 F. Supp. 2d at  657 ("The argument that

Defendants displayed deliberate indifference by failing to transfer [student's] harasser to a

different class also fails inasmuch as it calls on this Court to micromanage Defendants.").

Doe 1 does not allege that she had any further contact with Assailant 1, much less

that she experienced additional harassment, after making her report.  She alleges only that she

feared she would see him on campus (Compl. ¶¶ 83, 84), and that on one undated occasion she

saw video footage of him walking into her dormitory building, without any contact with her (*id.*

¶ 86).  This is insufficient.  *Ha*, 2014 U.S. Dist. LEXIS 160046, at *7-8 ("[O]ccasional glimpse

of [harasser] on the campus" and "claims that knowledge of [harasser's] presence on the campus

caused [plaintiff] considerable grief" are not actionable under Title IX).

Doe 1 alleges that she never received a formal resolution of her complaint.

Compl. ¶¶ 74-75.  Yet, by April 2006 – two months after her report – Howard found Assailant 1

responsible for sexual misconduct against Doe 2 and suspended him for two years.  *Id.* ¶ 132.

While Doe 1 may have wanted a separate finding in her own case, she was not legally entitled to

one given that Assailant 1 had already been disciplined and removed from campus.  *See Preusser*

*v. Taconic Hills Cent. Sch. Dist.*, No. 1:10-CV-1347 (MAD/CFH), 2013 U.S. Dist. LEXIS 7057

(N.D.N.Y. Jan. 17, 2013) ("Upon receipt of a Title IX grievance, a school district is not required

to proceed in a particular manner, even if there are policies in place that would appear to require

the initiation of a formal investigation."); *Noble v. Branch Intermediate Sch. Dist.*, No. 4:01cv

58, 2002 U.S. Dist. LEXIS 19600, at *56-57 (W.D. Mich. Oct. 9, 2002) (finding that, where

complainant found out the respondent was suspended but never returned to campus, "[f]ormal

expulsion proceedings were unnecessary and futile.  Title IX does not require school

administrators to pursue unnecessary and fruitless remedies.").

   Finally, as with the other Plaintiffs, Doe 1 alleges a litany of purported delays and

other supposed procedural missteps in Howard's handling of her claim.  *See, e.g.,* Compl. ¶¶ 54,

56, 58-59, 70-72, 74-75, 92, 98-100, 102, 104, 108.  Such allegations sound in negligence, not

deliberate indifference.  "Title IX does not require flawless investigations or perfect solutions."

*Sanches*, 647 F.3d at 170; *see Facchetti*, 175 F. Supp. 3d at 637 (stating that whether a college's

response was "reasonable or proper . . . is not the correct standard" under Title IX, it must have

been "clearly unreasonable" to trigger liability); *see also Ross v. Univ. of Tulsa*, 180 F. Supp. 3d

951, 973 (N.D. Okla. Apr. 15, 2016) (granting summary judgment despite evidence of potential

missteps in the process because "[t]he inquiry is not whether [the university] could have done

better; it is whether [the university] acted with deliberate indifference to its Title IX obligations

when [plaintiff] reported rape.").

### b. *Jane Doe 2 Fails to State a Discrimination Claim*

   In October 2015, Jane Doe 2 reported that she had been sexually assaulted and

harassed by her ex-boyfriend, another Howard student.  Compl. ¶ 114-15.  Howard began

investigating her report and moved Doe 2 to a different dormitory.  *Id.* ¶ 118.  In April 2016,

Howard notified Doe 2 that it completed its investigation, found the respondent responsible, and

suspended him from campus for two years.  *Id.* ¶ 132.  While Doe 2 alleged that she was

-27-

continuously harassed by her alleged assailant ***prior*** to reporting it to Howard, she does not allege that any harassment occurred ***after*** Howard was put on notice of her complaint.

As shown above, Doe 2's claim that Howard took too long to (favorably) resolve her complaint (*id.* ¶ 133) is not actionable under Title IX. In addition, while Doe 2 chose to leave campus while Howard's investigation was ongoing, she makes no allegation that her alleged assailant continued to harass her, or even that she encountered him on campus, after she made her report, only that "she was afraid . . . [to] run into her assailant on campus . . . ." *Id.* ¶ 123. Her decision to leave does not mean that Howard was deliberately indifferent. Otherwise, schools would have no choice but to immediately expel a student accused of sexual assault to eliminate any possibility that a complainant might see them about campus – a result raising significant due process concerns.[7] *See Karasek*, 2015 U.S. Dist. LEXIS 166524, at *48 ("[P]laintiff[']s contentions that the University acted with deliberate indifference by allowing John Doe 2 to remain on campus unrestricted for some period of time during the course of its investigation . . . run counter to the basic Title IX precept that 'victims of peer harassment [do not] have a Title IX right to make particular remedial demands.'" (quoting *Davis,* 526 U.S. at 648)); *Ha*, 2014 U.S. Dist. LEXIS 160046, at *7-8 (plaintiff's claim that "knowledge of [her alleged harasser's] presence on the campus caused her considerable grief" was "not actionable under Title IX").

---

[7] The *Davis* decision was a 5-4 decision of the Court, and accompanied by a vigorous dissent by Justice Kennedy. The majority opinion repeatedly took pains to push back against the "parade of horribles" offered by the majority. Among other things, the dissent pointed out that: "A school faced with a peer sexual harassment complaint in the wake of the majority's decision may well be beset with litigation from every side. One student's demand for a quick response to her harassment complaint will conflict with the alleged harasser's demand for due process." 526 U.S. at 682 (Kennedy, J., dissenting). The majority pushed back: "We trust the dissent's characterization of our opinion will not mislead courts to impose more sweeping liability than we read Title IX to require." *Id.* at 652.

c.     *Jane Doe 3 Fails to State a Discrimination Claim*

The Complaint demonstrates that Howard appropriately responded to Jane Doe

3's report of sexual assault – it was not deliberately indifferent and it did not discriminate against

her.  In November 2014, Howard received a report that Doe 3 had been sexually assaulted and

harassed by a campus police officer she had been dating for several months.  Compl. ¶¶ 141,

144.  Howard's Title IX Coordinator, Howard's Director of the IVPC, and a Howard campus

police officer, all accompanied Doe 3 to make her report to the D.C. Police.  *Id.* ¶¶ 145-46.  In

April 2015, when Doe 3 sought academic accommodations, the Dean of Special Student Services

provided her with letters to give to her professors.  *Id.* ¶¶ 169-69.  All but two of her professors

granted her extensions of time.  *Id.* ¶ 170.  At some (unidentified) point in time, Doe 3 learned

that Howard had terminated her alleged assailant from campus police.  *Id.* ¶ 212.  She does not

allege that she faced any further harassment after making her report.

Doe 3's "most significant cause of . . . concern" about Howard's response was

that she never received the individual counseling she requested, despite telling Howard that she

was depressed and suicidal.  *Id.* ¶ 186.  The Complaint shows that Howard did not simply ignore

Doe 3's request – it offered her group counseling, which she rejected.  But even if Howard had

refused to provide Doe 3 with any counseling, schools have limited resources to devote to a wide

variety of student concerns on campus, and failure to provide counseling is not actionable under

Title IX.  *See Hazley v. Monroe County Bd. of Ed.,* No. 08-0142-WS-B, 2008 U.S. Dist. LEXIS

102283 at *9 (S.D. Ala. Dec. 17, 2008) ("[T]he plaintiffs have offered, and the Court has

discovered, no authority for the proposition that a defendant has any duty under Title IX to offer

counseling to a student victim of teacher sexual harassment."); *see also Romero v. City of New

York*, 839 F. Supp. 2d 588, 613 (E.D.N.Y. 2012) (finding that, even if the parent of a minor

student asserting a Title IX claim had requested counseling services, "the failure to provide

services, by itself, is not sufficient to constitute 'an official decision by the recipient not to remedy the violation'") (citing *Gebser*, 524 U.S. at 290)).

Doe 3 also blames Howard for her failing grades in two classes, because the University did not force her professors to give her the extensions she requested. Compl. ¶¶ 170, 176. Howard had no obligation to ensure that Doe 3 received the particular academic accommodations she wanted.[8] Moreover, despite alleging that her professors "refused to provide or engage in a conversation regarding an academic accommodation" (*id.* ¶ 173), Doe 3 admits that Howard faculty and administrators had multiple conversations with her. Doe 3 did not request accommodations until April 2015, close to the end of the spring semester. *Id.* ¶ 167. Both of her professors explained to Doe 3 that they could not grant the extensions she wanted because she sought them too late in the semester, and advised that she withdraw from their classes to avoid a failing grade (which she did not do). *Id.* ¶¶ 171-72. Later, Howard's Title IX Coordinator and a Howard dean separately explained to Doe 3 that professors had final say in granting accommodations in their classes and the University could not force them to do so. *Id.* ¶¶ 173-74, 184. When Doe 3 later wanted Howard to change her failed grades to incompletes, Howard's counsel explained to Doe 3 and her attorney that she had not completed enough work to qualify for incompletes in those classes under the University's academic policies. *Id.* ¶ 191. Thus, the Complaint itself shows that, at every turn, Howard made reasonable efforts to evaluate

---

[8] Even in the ADA context, a school need not make any accommodation that alters the fundamental educational requirements of its courses. *See School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 288 n. 17 (1987) (stating that "an [a]ccommodation is not reasonable if it . . . requires a fundamental alteration in the nature of the program"); *accord Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 793 (1st Cir. 1992) (affirming summary judgment for university in ADA case where "accommodating plaintiff would lower academic standards or otherwise unduly affect its program"). Here, the University engaged in a reasonable, interactive process with Plaintiff to address her concerns, and was not deliberately indifferent.

Doe 3's requests and explain to her when and why they were not feasible.  That Doe 3 did not like those answers does not mean that Howard was deliberately indifferent to her report.

### d.     *Jane Doe 4 Fails to State a Discrimination Claim*

Howard did not make an affirmative decision to ignore Jane Doe 4's report of sexual assault; rather, Howard granted her request to change dormitories a week after her report (during which Howard was on Spring Break),[9] issued a protective order against the respondent, provided academic accommodation letters for her professors, and on August 23, 2016, issued a finding of responsibility against the respondent and suspended him for a semester.  Compl. ¶¶ 226, 228, 232, 236, 251, 287.  The process, therefore, took only about five months, part of which was the summer break.

In addition, Doe 4 does not allege that she experienced any further harassment after her report.  She alleges that she saw the respondent around campus while the investigation was pending "[o]n at least four occasions in less than three weeks" (*id.* ¶ 244), but without any interaction with him.  She also saw him on campus once at a homecoming pep rally after his suspension (*id.* ¶ 288), but campus police removed him within an hour of her report after confirming that he had been suspended and barred from campus.  Again, she does not allege that he harassed or even attempted to contact her on that occasion.  These sightings alone do not sufficiently plead actionable harassment "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit" provided by the school.  *Davis*, 526 U.S. at 633.

---

[9] At no point did Doe 4 share a dormitory with her alleged assailant.  He lived in the dormitory next to her building before she changed dorms.  Compl. ¶ 227.

Doe 4's remaining allegations relate to particular remedial demands that she did not receive, including that Howard did not (1) coordinate her schedule with the respondent to ensure she would not see him in the cafeteria, fitness center, or other "main locations on campus" (Compl. ¶¶ 245, 250); and (2) force her professor to give her the extension of time she requested (*id.* ¶¶ 237-242). But she was never entitled to those demands and cannot sue Howard for damages because it did not provide a particular "remedy" to harassment committed not by the school, but by someone else. *See Vance*, 231 F.3d at 260 (stating "[v]ictims do not have a right to particular remedial demands" under Title IX); *Oden*, 440 F.3d at 1089 ("An aggrieved party is not entitled to the precise remedy that he or she would prefer."); *accord Moore v. Regents of the Univ. of Cal.*, No. 15-cv-05779-RS, 2016 U.S. Dist. LEXIS 67548, at *21 (N.D. Cal. May 23, 2016) (dismissing Title IX claim involving university's alleged failure to provide plaintiff with the coursework accommodations she requested following her alleged assault).

Similarly, Doe 4 was unhappy with the respondent's one-semester suspension, and preferred "a longer suspension that would allow her to complete her education without fear of seeing him on campus." Compl. ¶ 291. Yet, Title IX does not require that she agree or approve of the sanction imposed. *See Ohio State*, 2006 U.S. Dist. LEXIS 70444, at *43 ("Simply because Plaintiff believes that [her alleged attacker] should have been expelled after the attack on Ms. Lee, does not mean that OSU was required to do so."). Doe 4's discrimination claim therefore should be dismissed.

### e.      *Jane Doe 5 Fails to State a Discrimination Claim*

The Complaint shows that Howard investigated Jane Doe 5's claim, resolved it in her favor, sanctioned the respondent, and granted the single accommodation she requested. The allegations demonstrate that Howard did not make an affirmative decision to ignore her complaint, nor did she suffer any additional harassment that was caused by any action or inaction

by Howard.  To the contrary, after her reported sexual assault, Doe 5 never saw the respondent again.

Doe 5 reported her alleged assault to Howard on April 29, 2015.  Compl. ¶ 304. On the same day – in a completely unrelated development – she discovered she was several credits short to graduate in the spring 2015 semester as she had planned.  *Id.* ¶ 305.[10]  Doe 5 "requested accommodations to take those credits at a different school closer to her home in Michigan" because she was allegedly afraid to remain on campus.  *Id.* ¶ 307.  Howard approved her request to take summer courses in Michigan in time for her enrollment deadline and later accepted her credits so that she was able to graduate, even waiving the University requirement that students complete their last 30 academic credits at the University.  *Id.* ¶¶ 316, 346.  On December 9, 2015, Howard found the respondent in Doe 5's case responsible for sexual misconduct and suspended him for two years.  *Id.* ¶ 334.

Despite getting the outcomes she desired, Doe 5 takes issue with purported delays in the process, claiming that Howard took over seven months to resolve her claim.  *Id.* ¶¶ 304, 334-335.[11]  Allegations of delay alone, however, are not enough to show deliberate indifference. *See, e.g., Oden*, 440 F.3d at 1089 (nine-month delay in proceedings was not deliberately indifferent).  Moreover, the delays in the investigation were not unreasonable, never mind deliberate indifference.  Doe 5 admits that she did not send her final statement of claims to the

---

[10] Doe 5 does not allege that the notice she received from Howard regarding her ineligibility to graduate had anything to do with her sexual assault report.  (It did not).

[11] Although Doe 5 also suggests that Howard's delay in approving her credits caused her seven months of distress at the possibility of having to return to Howard while the respondent was on campus (*see* Compl. ¶ 346), the facts she pleads undermine that inference.  Doe 5 submitted her summer grades to Howard for approval on September 14, 2015.  *Id.* ¶ 325.  While Howard did not confirm its approval until April 25, 2016, she learned months before – on December 9, 2015 – that the respondent would be suspended for two years.  *Id.* ¶ 334.  Thus, even if Doe 5 remained unsure about whether she would need to return to campus, she knew during most of that seven-month period that the respondent would no longer be on campus.

Title IX Coordinator until July 1, 2015 (Compl. ¶ 320), which was already more than 60 days

after her report on April 29.  In addition, because she reported her assault at the end of the spring

semester, the investigation spanned into the summer break when student witnesses are away

from campus and not easily reachable.  *See id.* ¶ 321 (alleging Title IX informed Doe 5 on July 9,

2015 that she had not yet been able to contact the respondent).

       Nor does Doe 5 allege that any "deliberate indifference" by Howard caused her to

suffer further harassment.  While Doe 5 alleges that she left campus out of fear after her assault

(*id.* ¶ 346), she does ***not*** allege facts suggesting that she left due to any further harassment or

because Howard responded inadequately to her safety concerns.  In fact, she does not even allege

that she discussed her safety concerns with anyone at Howard or asked for any accommodations

before she had already decided to leave.  Instead, Doe 5 left Howard's campus just days after

reporting her alleged assault because (a) it was the very end of the spring semester in which she

had expected to graduate and depart from campus anyway, and (b) she decided to heed the

advice of a D.C. Police detective – not the University – who told her to return home to Michigan

to avoid any chance of retaliation by the respondent.  *See id.* ¶ 301 (alleging assault at a

graduation party on April 25), ¶¶ 302-303 (alleging her report to the police on April 26); ¶ 304

(alleging her report to Howard on April 29); ¶ 309 (alleging she returned home to Michigan).

Thus, any suggestion that Doe 5 left campus because of Howard's response (or lack thereof) to

her report is unsupported by the pleaded facts and implausible.

       Finally, Doe 5 alleges that Howard allowed the respondent in her case to continue

attending classes "[d]uring that fall semester, despite being found guilty of sexual assault."  *Id.* ¶

336.  Even if true, "during" here would mean, at most, just a few days.  There was no finding of

responsibility against the respondent until December 9 (*id.* ¶ 334), which was shortly before the

end of the fall semester.  In any event, his presence had no effect on Doe 5 because she had already left campus long before that semester and had completed all her coursework.  *Id.* ¶ 309.

**B.    The Court Should Dismiss Counts II (Jane Doe 1), IV (Jane Doe 2), and VIII (Jane Doe 5) Because Plaintiffs Do Not State a Title IX Claim For Retaliation**

In addition to their sex discrimination claims, Jane Does 1, 2 and 5 bring retaliation claims under Title IX.  The United States Supreme Court has recognized a claim for retaliation under Title IX "when a funding recipient retaliates against a person because he complains of sex discrimination . . . ."  *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005).

However, "[t]he threshold issue for any Title IX claim" – including retaliation claims – "is whether there has been discrimination based on sex."  *Delbert v. Duncan*, 923 F. Supp. 2d 256, 261 (D.D.C. Feb. 14, 2013).  Like their discrimination claims, Plaintiffs' retaliation claims fail to meet this threshold absent any allegations that Howard acted based on their gender.  Accordingly, their retaliation claims should be dismissed.  *See id.* ("Aside from plaintiff's mere mention of his sex . . . there are no factual allegations set forth in the complaint to suggest discrimination on this basis and, therefore, he is not able to sustain a claim of retaliation under Title IX."); *see also Goring v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. College*, 932 F. Supp. 2d 642, 656 (M.D. La. 2010) (granting summary judgment against plaintiff's Title IX retaliation claim after finding "no evidence in the record of any retaliatory actions based on gender").

In addition, Plaintiffs fail to plead facts showing causation, an essential element of a retaliation claim.  To state a *prima facie* claim for retaliation under Title IX, a plaintiff must allege facts to support a plausible claim "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two."

-35-

*Wells v. Hense*, 2017 U.S. Dist. LEXIS 9332, at *16 (D.D.C. Jan. 24, 2017) (quoting *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 867 (9th Cir. 2014)).  With respect to causation, a plaintiff must allege that "a retaliatory motive played a substantial part in prompting the adverse action."  *Id.* (quoting *Frazier v. Fairgaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002)).  "[C]lose temporal proximity . . . is insufficient, standing alone, to satisfy [plaintiff's] burden to bring forward some evidence of pretext."  *Baldwin v. New York State*, No. 15-3910, 2017 U.S. App. LEXIS 8261, at *7 (2d Cir. May 10, 2017) (internal quotation marks and citations omitted).

         In *Wells*, the plaintiffs alleged that school officials retaliated against them for reporting sexual misconduct by (1) failing to properly investigate and otherwise ignoring their mandated Title IX responsibilities, and (2) declining to intervene to stop the harassment and bullying by other students.  2017 U.S. Dist. LEXIS 9332, at *15.  The court dismissed plaintiffs' retaliation claims after finding no causal connection between their acts of reporting the sexual harassment and the school's alleged failure to respond appropriately.  *Id.*, at *16; *see Gillen v. Borough of Manhattan Community College*, No. 97 Civ. 3431 (DAB), 1999 U.S. Dist. LEXIS 4862, at *22 (S.D.N.Y. Apr. 12, 1999) (dismissing Title IX retaliation claim where "there is no allegation of a causal connection between Plaintiff's complaints to [the university] and an adverse employment action taken by [the university]"); *see also Ross*, 506 F. Supp. 2d at 1361 (granting summary judgment on Title IX retaliation claim because "[Plaintiff] has offered no evidence of any kind that would show that [the university's] inaction was motivated by retaliation.").  Here, as in *Wells*, Jane Does 1, 2, and 5 fail to allege any facts showing a causal connection between their reports of sexual assault and any alleged deficiencies in Howard's response.

1.      __Jane Doe 1 Fails to State a Retaliation Claim__

Doe 1 alleges that Howard retaliated against her when it "fired her from her position as a Resident Assistant because of her assailant's allegations" that Doe 1 violated a University policy.  Compl. ¶¶ 364-65.  Her own pleading negates a causal connection:  she was removed as an RA in response to a report that she violated University policy, ***not*** in response to her report of sexual assault.  The University made clear to Doe 1's attorney that her removal was a Human Resources issue "not related to Plaintiff's complaint of sexual assault."  *Id.* ¶ 95.  In addition, that Howard also removed Doe 1's male friend from his RA position based on his involvement in the same reported policy violation belies any claim that Doe 1 was targeted because she is female or reported a sexual assault.  *See id.* ¶ 101.  And Howard ultimately reinstated Doe 1 as an RA for the next academic year.  *Id.* ¶¶ 105-06.

To the extent Doe 1 alleges Howard "enforced" her alleged assailant's retaliation by acting on his report (*id.* ¶ 88), this claim is baseless.  Critically, Doe 1 does not deny that she violated University policy or allege that his report against her was false.  *See id.* ¶¶ 60-61, 364-365.  Even if his motive in reporting her was retaliatory, she cannot impute his motive or his actions to Howard.  *See Miles v. Washington*, No. CIV-08-166-JHP, 2009 U.S. Dist. LEXIS 7300, at *11 (E.D. Okla. Feb. 2, 2009) (finding "[t]he actions of the students who threatened Plaintiff after she reported the rape are insufficient to establish that [the college] took some form of adverse action toward Plaintiff," because "[t]he students are not agents of the school and their actions can not be considered the actions of the school."); *Ross*, 506 F.Supp.2d at 1361 (holding that evidence of threats and other intimidating actions by university students was insufficient to establish that the university retaliated against a student who reported sex discrimination).  Indeed, Doe 1 admits that, as an RA, she was responsible for serving as a "role model to fellow college students" (Compl. ¶ 46) and, therefore, upholding University policies.  Doe 1 was not

entitled to a free pass for violating those policies just because the report came from her alleged

assailant, and the University was not prohibited from enforcing its conduct policies with regard

to Doe 1 simply because she had previously filed a Title IX complaint.

### 2.   Jane Doe 2 Fails to State a Retaliation Claim

Jane Doe 2 alleges that Howard retaliated against her "when it charged her for

moving dormitories" and "continued to place inaccurate charges and holds on her account."

Compl. ¶ 137.  Even if true, she pleads no facts suggesting that any of these events occurred in

retaliation to her report of sexual assault.

Doe 2 alleges that she disputed these charges with "Howard" (without identifying

any individuals or departments) when she attempted to withdraw at the end of the Fall 2015

semester, and again when she attempted to transfer to another school in July 2016.  *Id.* ¶¶ 123-

124, 127.  She does not allege, however, that those to whom she spoke even knew that she had

reported a sexual assault in October 2015 (they did not), or whether they would have reason to

know that the charges on her account were incorrect or had the authority to remove them.  Doe

2's allegations describe, at best, accounting mistakes or misunderstandings, and are insufficient

to plausibly allege that Howard had "a retaliatory motive [that] played a substantial part in

prompting" the financial errors on her account.  *Wells*, 2017 U.S. Dist. LEXIS 9332, at *16; *see*

*Tackett v. Univ. of Kan.*, No. 16-2266-JTM, 2017 U.S. Dist. LEXIS 19536, at *18 (D. Kan. Feb.

10, 2017) (finding that "demanding payment for tuition . . . or placing a hold on transcript are

standard practices when a student withdraws from school. The court finds no basis to infer that

[the university] did any of these acts to plaintiff with retaliatory animus.").

Jane Doe 2's remaining allegations of retaliation fail because, like Doe 1's

retaliation claim, they merely duplicate the same allegations underlying her discrimination claim.

*Compare* Compl. ¶¶ 373-377 *with* ¶¶ 383-84, 386-387.  In this district, the *Wells* court doubted

"whether it is even possible for deliberately harmful inaction in response to a report of sexual harassment is equal to an adverse action for purposes of retaliation[.]"  2017 U.S. Dist. LEXIS 9332, at *16 n.4.

Other courts have held that a plaintiff may not rely on allegations that the same conduct constituted both deliberate indifference and retaliation under Title IX.  *See Williams v. Columbia Univ.*, No. 11 Civ. 8621 (WHP), 2012 U.S. Dist. LEXIS 130358, at *8 (S.D.N.Y. Aug. 28, 2012) (dismissing Title IX retaliation claim because a "'failure to investigate a complaint cannot be considered an adverse . . . action taken in retaliation for the filing of that same complaint' because it 'will not ordinarily constitute a threat of further harm[.]'") (quoting *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 722 n.8 (2d Cir. 2010)); *Ross*, 506 F. Supp. 2d at 1361 ("[T]he Court does not believe the Supreme Court, when it announced its holding in *Jackson*, intended the same set of facts to give rise to both a discrimination and a retaliation claim.").

### 3.    Jane Doe 5 Fails to State a Retaliation Claim

Like Jane Doe 2, Jane Doe 5's retaliation claim merely duplicates her discrimination claim – *e.g.*, that Howard retaliated against her for reporting her sexual assault by purportedly failing to complete a timely investigation or to provide her with accommodations. *Compare* Compl. ¶¶ 420-424 *with* ¶¶ 430-433.  Because Doe 5's retaliation claim simply repeats her discrimination claim, which too fails, her retaliation claim should be dismissed.

-39-

## V.      RELIEF

For the foregoing reasons, Defendant Howard University respectfully requests that the Court dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.

The University requests oral argument on this Motion pursuant to Local Rule LCvR 7(f).

Date:  July 3, 2017                        Respectfully submitted,

                                           /s/ Matthew D. Foster_____
                                           Matthew D. Foster
                                           (D.C. Bar No. 503057)
                                           **PEPPER HAMILTON LLP**
                                           Hamilton Square
                                           600 Fourteenth Street, N.W.
                                           Washington, D.C. 20005-2004
                                           fosterm@pepperlaw.com
                                           Telephone: 202.220.1235
                                           Facsimile:  202.220.1665

                                           Michael E. Baughman, Esq. (*pro hac vice*)
                                           (PA Bar No. 78690)
                                           baughmam@pepperlaw.com
                                           Hedya Aryani, Esq. (*pro hac vice*)
                                           (PA Bar No. 306616)
                                           aryanih@pepperlaw.com
                                           PEPPER HAMILTON LLP
                                           3000 Two Logan Square
                                           Eighteenth & Arch Streets
                                           Philadelphia, PA  19103-2799
                                           (215) 981-4000

                                           Ariana Wright Arnold, Esq.
                                           Senior Associate General Counsel
                                           Howard University
                                           2400 6th Street, N.W.
                                           Johnson Administration Building, Suite 321
                                           Washington, DC  20059
                                           (202) 806-2657
                                           ariana.arnold@Howard.edu

                                           *Attorneys for Defendant Howard University*

## CERTIFICATE OF SERVICE

I certify that on the 3rd day of July, 2017, a copy of the foregoing Defendant

Howard University's Motion to Dismiss Plaintiffs' Complaint was served electronically via the

Court's Electronic Case Filing system on the following:

> Linda M. Correia (D.C. Bar No. 435027)
> Lauren A. Khouri (D.C Bar No. 10282288)
> 1775 K Street NW, Suite 600
> Washington, DC 20006
> (202) 602-6500
> lcorreia@correiaputh.com
> lkhouri@correiaputh.com
>
> *Counsel for Plaintiffs*

> /s/ Matthew D. Foster
> Matthew D. Foster, DC Bar #503057
> **PEPPER HAMILTON, LLP**
> Hamilton Square
> 600 Fourteenth Street, N.W.
> Washington, DC  20005-2004
> fosterm@pepperlaw.com
> Telephone:  202.220.1235
> Facsimile:  202.220.1665
>
> *Attorney for Defendant*
> *Howard University*