UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| JANE DOE 1, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-cv-870 (TSC) |
| | ) | |
| HOWARD UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Six current and former Howard University students, proceeding under pseudonyms Jane Does 1 through 6, claim that the school violated Title IX after they reported being sexually assaulted. Their Amended Complaint contained two causes of action: 1) Title IX deliberate indifference discrimination claims (brought by all six Jane Does); and 2) Title IX retaliation claims (brought by Jane Does 1, 2, and 5). On July 11, 2019 this court granted in part and denied in part Howard's Motion to Dismiss Plaintiffs' Amended Complaint. *See* Mem. Op. & Order, ECF Nos. 34 & 35, *Doe 1, et al. v. Howard Univ.*, 2019 WL 3037605 (D.D.C. July 11, 2019).

The court ruled that under *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999), a plaintiff adequately pleads deliberate indifference discrimination by alleging that her school's deliberate indifference made her vulnerable to further harassment—i.e., that a plaintiff need not plead that her school's deliberate indifference caused her to suffer subsequent harassment. Consequently, the court denied Howard's motion to dismiss the deliberate indifference claims as

1

to Jane Does 1, 2, 4, and 6, but granted it, with leave to amend, as to Jane Does 3 and 5. The court also denied Howard's motion to dismiss the retaliation claims.

Soon after, Howard filed a motion for reconsideration or, in the alternative, for interlocutory appeal. ECF No. 40. Plaintiffs filed a Second Amended Complaint, ECF No. 38, and Howard moved to dismiss it, ECF No. 44.

For the reasons set forth below, the court will GRANT in part and DENY in part Howard's motion to dismiss, DENY Howard's motion for alternative relief insofar as it seeks reconsideration, and GRANT the motion insofar as it seeks certification for interlocutory appeal.

## I. MOTION FOR RECONSIDERATION

The crux of Howard's motion for reconsideration is that this court failed to consider *Blue v. District of Columbia*, 811 F.3d 14 (D.C. Cir. 2015) (*Blue II*),[1] which Howard now describes as binding authority on the question of whether pleading vulnerability to subsequent harassment is enough to establish a claim of Title IX deliberate indifference discrimination.

Howard's initial motion to dismiss included a lengthy section concerning whether pleading vulnerability to further harassment is sufficient to make out a deliberate indifference claim. *See* ECF No. 23-2 at 19-24. Yet Howard did not discuss *Blue II* and referred to the opinion only in its subsequent history citation to the District Court's opinion.

Nonetheless, Howard now argues that "the D.C. Circuit addressed the question of whether further harassment is required to state a Title IX claim in *Blue* [*II*], holding that a school can be liable only where the alleged harassment came 'to the school officials' attention while the harassment was ongoing.'" ECF No. 40 at iv (quoting *Blue II*, 811 F.3d at 21). This argument

---

[1] The court will refer to the D.C. Circuit's opinion as *Blue II* and the District Court's opinion, *Blue v. District of Columbia*, 850 F. Supp. 2d 16 (D.D.C. 2012), as *Blue I*.

rests solely on the proposition that because the District Court in *Blue I* concluded that a showing of further harassment was required, the D.C. Circuit's affirmance in *Blue II* signified its agreement that a showing of further harassment was a necessary pleading requirement. Not so. The Circuit affirmed the District Court's Title IX ruling solely on the ground that the plaintiff failed to plead actual notice. *See Blue II*, 811 F.3d at 21 ("Although Blue insists that she has established all three elements, *we need address only the second, actual notice*.") (emphasis added); *cf. Farmer v. Kan. State Univ.*, 918 F.3d 1954, 1107-1109 (10th Cir. 2019) (omitting *Blue II* from a discussion of out-of-Circuit cases indicating that a showing of further harassment is a necessary component of the pleading requirement).² Nothing in *Blue II* indicates that the Circuit even considered the question of whether a plaintiff must show subsequent harassment.

This court already considered and rejected Howard's other arguments for reconsideration in its earlier opinion and will therefore deny the motion for reconsideration.

## II.   MOTION TO DISMISS

Plaintiffs' Second Amended Complaint adds factual allegations to Jane Doe 3 and Jane Doe 5's deliberate indifference discrimination claims (Counts V and VIII) and a new retaliation claim by Jane Doe 3 (Count VI). The court has already stated the applicable legal standard for a motion to dismiss, the legal standards for Title IX deliberate indifference discrimination and retaliation claims, and much of the pertinent background for Jane Does 3 and 5's deliberate indifference claims.

---

² Howard suggests that this court may have been unaware of the D.C. Circuit's opinion in *Blue II* because it did not provide the subsequent history when it cited *Blue I*. In fact, the court cited *Blue II* in its legal standard section. *See* ECF No. 34 at 2.

### 1. Jane Doe 3's Discrimination Claim (Count V)

In its July 2019 Opinion, the court dismissed Jane Doe 3's Title IX discrimination claim because she did not allege when she learned that her assailant had been fired; the court was therefore unable to determine whether Howard's alleged deliberate indifference caused her to be vulnerable to future harassment.

Jane Doe 3 now claims that she "heard from campus police that her assailant was no longer working with Howard University soon after her report of assault." Second Am. Compl. ¶ 217. However, she also claims that because she believed the investigation was ongoing, she assumed her assailant's employment status was temporary until the investigation was complete. *Id.* ¶ 218. In addition, Howard did not issue a no-contact order or enact other measures that would have prevented her assailant from contacting her on campus. *Id.* ¶ 219. Because she feared seeing her assailant, Jane Doe 3 was afraid for her safety and did not attend her graduation ceremony. *Id.* ¶¶ 219-222.

Jane Doe 3's added factual allegations do not provide enough support for her deliberate indifference claim to survive Howard's motion to dismiss. Even if the court concluded that Howard's actions amounted to deliberate indifference, the court would be unable to find it plausible that Howard caused Jane Doe 3 to be vulnerable to future harassment. The court is unaware of any case that permits liability in this instance. Howard "terminated" Jane Doe 3's assailant, and Jane Doe 3 learned of this "soon after" she reported the sexual assault. *Id.* ¶¶ 216-17. Jane Doe 3's fear that her assailant might return to campus does not establish that Howard caused her to be vulnerable to further harassment. With respect to Jane Doe 3's allegation that Howard did not issue a no-contact order or put in place other measures, there is no evidence that Jane Doe 3 ever requested a no-contact order, and, in any event, complainants do not have a right

to make "particular remedial demands." *Davis*, 526 U.S. at 648. Therefore, the court will grant Howard's motion to dismiss Jane Doe 3's discrimination claim (Count V).

### 2. Jane Doe 5's Discrimination Claim (Count VIII)

The court initially dismissed Jane Doe 5's Title IX discrimination claim because she did not allege that, had her assailant been removed from campus, she would have returned to Howard, or that she told Howard she wished to return. Jane Doe 5 now claims that but for Howard's slow investigation she would have returned to campus to complete the credits she needed to graduate. *See* Second Am. Compl. ¶ 349. Therefore, the court will deny Howard's motion to dismiss Jane Doe 5's discrimination claim (Count VIII).

### 3. Jane Doe 3's Retaliation Claim (Count VI)

Although the court did not grant leave to amend the complaint beyond the discrimination claims for Jane Doe 3 and Jane Doe 5, Jane Doe 3 added a retaliation claim pursuant to Federal Rule of Civil Procedure 15(c)(1)(B), which states: "An amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

Howard learned of Jane Doe 3's sexual assault report in November 2014. Second Am. Compl. ¶¶ 147-49. Jane Doe 3 alleges numerous plausible adverse actions, including that Howard declined to help her obtain counseling or academic accommodations; refused to provide her a copy of her medical records; told her that people would "judge her" for her medical file; failed to provide her with information about her assailant's status on campus; and withdrew her financial aid so that she could not register for classes. *Id.* ¶¶ 489-95. For the reasons provided in the court's previous opinion with respect to the other Plaintiffs' retaliation claims, *see* Mem. Op.

at 23-24, 28-29, these facts are enough at this stage for Jane Doe 3 to establish a plausible claim that Howard retaliated against her for her sexual assault report.

## III. INTERLOCUTORY APPEAL

Howard asks this court to certify its July 11, 2019 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Plaintiffs oppose this motion. For the reasons set forth below, the court will grant the motion.

Generally, a party may appeal only a final decision. 28 U.S.C. § 1291. However, § 1292(b) gives district courts discretion to certify an order for appeal when "(1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance the litigation." *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 95 (D.D.C. 2003). Interlocutory appeals are "rarely allowed and [the] movants. . . bear the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1116 (D.D.C. 1996) (quotation marks and citations omitted). Because of the "strong congressional policy against piecemeal review, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals," *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 20 (D.D.C. 2002) (quoting *United States v. Nixon*, 418 U.S. 683, 690 (1974)), certification is "reserved for truly exceptional cases," *id.* (quotation marks and citations omitted).

### 1. Controlling Question of Law

A controlling question of law is "one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the

parties' resources." *Judicial Watch*, 233 F. Supp. 2d at 19 (quotation and citation omitted). "Controlling questions of law include issues that would terminate an action if the district court's order were reversed," and those "that may significantly impact the action." *APCC Servs., Inc.*, 297 F. Supp. 2d at 96.

Resolution in Defendant's favor of the question whether Plaintiffs must plead more than vulnerability to future harassment in making out Title IX discrimination claims would not necessarily terminate the action. Plaintiffs have alleged retaliation claims that could survive even if the D.C. Circuit concluded that Plaintiffs must plead more with respect to the discrimination claims. While it is true that the D.C. Circuit on a § 1292(b) appeal would have jurisdiction over this court's entire order, *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996), Defendant has not shown anything more than a possibility that the Circuit would dispose of the entire case.

On the other hand, resolution of the discrimination pleading issue in Defendant's favor would materially affect whether the Title IX discrimination claims can proceed. If Plaintiffs must plead actual further harassment, there is a substantial question of whether their discrimination claims survive, given Plaintiffs' reliance on a theory of vulnerability to harassment. Thus, Defendant has satisfied the first element of the § 1292(b) test.

### 2. Substantial Ground for Difference of Opinion

"A substantial ground for difference of opinion is often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits." *APCC Servs., Inc.*, 297 F. Supp. 2d at 97 (citations omitted). However, "[t]he mere fact that a substantially greater number of judges have resolved the issue one way rather than another does not, of itself, tend to show that there is no ground for difference of opinion." *Id.* at 98 (quotation

7

marks and citations omitted). "Instead, a court faced with a motion for certification must analyze the strength of the arguments in opposition to the challenged ruling to decide whether the issue is truly one on which there is a substantial ground for dispute." *Id.*

No case from this Circuit has addressed the question of whether a plaintiff can satisfy the Title IX pleading requirement by alleging that the school's deliberate indifference made her vulnerable to further harassment. The fact that two Circuits accepted § 1292(b) certifications from district court orders addressing the same pleading requirement is strong indication that there is a substantial ground for dispute. *Compare Farmer*, 918 F.3d at 1108-09 (stating that out-of-Circuit cases were "either distinguishable" or "[t]o the extend that ambiguous dicta can be found in any of them, they certainly cannot affect the binding guidance . . . from *Davis*") *with Kollaritsch v. Mich. State Univ. Bd. of Tr., et al.*, 17-2445, Dkt. 27-2 (6th Cir. June 25, 2018) (noting that other Circuits' holdings on the issue "whether a plaintiff must plead further acts of discrimination to allege deliberate indifference to peer-on-peer harassment under Title IX . . . indicate potential conflict").

### 3. Materially Advance the Ultimate Termination of the Litigation

"To satisfy this element a movant need not show that a reversal on appeal would actually end the litigation. Instead, the relevant inquiry is whether reversal would hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense." *Molock v. Whole Foods Mkt. Grp., Inc.*, 317 F. Supp. 3d 1, 6 (D.D.C. 2018).

If Howard is correct that Plaintiffs must allege more than vulnerability to additional harassment, then roughly half the claims in the Second Amended Complaint (five counts) could fail (depending on what would suffice to show further actual harassment). The effect of

eliminating these deliberate indifference discrimination claims is uncertain, because there may be substantial overlap between the factual issues involved in litigating the deliberate indifference discrimination claims and the retaliation claims. Even so, a ruling on the issue would simplify the litigation in a material way. Therefore, the court finds that certifying its order will materially advance the ultimate termination of the litigation.[3]

## IV. Conclusion

Accordingly, for the reasons stated above, the court will deny Howard's motion for reconsideration, grant in part and deny in part its motion to dismiss, and grant its motion to certify for interlocutory appeal.

The court will certify its previous Memorandum Opinion and Order, ECF Nos. 34 & 35, for interlocutory appeal for determination of the following controlling question of law: Were Plaintiffs required to allege, as a distinct element of their Title IX claims, that Howard's deliberate indifference caused them to suffer actual further harassment, rather than alleging that Defendant's post-report deliberate indifference made them "liable or vulnerable to" further harassment?[4]

---

[3] Section 1292(b) provides that "application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." The Defendant has not requested a stay, and the court is not inclined to grant one *sua sponte*.

[4] If the Court of Appeals finds that Plaintiffs are required to plead more than vulnerability to further harassment, then the next question is whether Plaintiffs' allegations of deprivation of access to educational opportunities satisfy this pleading requirement. Although this court did not reach this question, the Court of Appeals will have jurisdiction over the entire order and is not restricted to the question certified by this court. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) ("As the text of § 1292(b) indicates, appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court.") (emphasis in original).

Date: October 1, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge